**Stephen VAN–SCYOC, Appellant–Plaintiff,**

v.

**MID–STATE PAVING, Appellee–Defendant.**

No. 93A02–0207–EX–533.

Court of Appeals of Indiana.

May 7, 2003.

500

Timothy J. Vrana, Sharpnack Bigley LLP, Columbus, IN, Attorney for Appellant.

Miriam A. Rich, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Stephen Van–Scyoc ("Van–Scyoc") was employed by Mid State Paving ("Mid State") and injured while acting within the scope of his employment. Due to his injury, Van–Scyoc was unable to return to work, and Mid State's worker's compensation insurance carrier paid temporary total disability benefits to Van–Scyoc for approximately six months. After the insurer terminated disability and medical benefits, Van–Scyoc filed an Application for Adjustment of Claim with the Worker's Compensation Board ("the Board"). After a hearing, the single board member found that Van–Scyoc is permanently partially impaired as a result of the injury and entitled to compensation for five degrees of impairment, but that he is not disabled as a result of the injury. After reviewing the hearing member's award, the full Board adopted and affirmed that decision; however, three Board members dissented.

Van–Scyoc appeals and argues that the Board improperly denied his application for permanent total disability benefits. Finding that the Board's findings do not contain the requisite specificity to permit meaningful intelligent review, we remand for proceedings consistent with this opinion.

### Facts and Procedural History

On October 18, 1994, Van–Scyoc, a fifty-two year old male, was performing concrete roadwork for Mid State, which involved knocking metal forms weighing approximately fifty pounds off of the concrete after it was poured and finished. While lifting a form, Van–Scyoc slipped and felt instant pain in his hip, groin, and back. As a result of the injury, Van–Scyoc was treated by several medical providers, including Dr. J. Paul Kern.

Dr. Kern diagnosed Van–Scyoc as having a low back injury and referred him to Progressive Physical Therapy. Dr. Kern treated Van–Scyoc through December 22, 1994, and assigned to him a Permanent Partial Impairment rating ("PPI") of five percent. On that date, Dr. Kern concluded that Van–Scyoc had reached maximum medical improvement and no medical or surgical treatment would significantly change his overall functional level. Appellant's App. p. 218. Dr. Kern also adopted the Functional Capacity Evaluation prepared by Progressive Physical Therapy and released Van–Scyoc to return to work with certain work restrictions. Appellant's App. pp. 218, 220. Several restrictions were imposed on Van–Scyoc, including: 1) at a maximum, Van–Scyoc's can perform floor to waist lifting of ten pounds for five percent of an eight-hour day and six pounds for thirty-three percent of an eight-hour day; 2) Van–Scyoc cannot walk more than thirty-three percent of an eight-hour day; 3) Van–Scyoc must avoid any crawling, kneeling, crouching, or repetitive squatting; 4) Van–Scyoc can only sit for up to five percent of an eight-hour day and needs frequent breaks from sitting in order to stand up; 5) Van–Scyoc can only stand for up to five percent of an eight-hour day and requires frequent breaks in order to walk or sit. Appellant's App. pp. 155–57.

On January 13, 1995, Van–Scyoc was examined by Dr. Herbert Biel at the request of Mid State's worker's compensation carrier, and Dr. Biel's diagnosis was lumbar strain. Dr. Biel agreed with Dr.

Kern's recommendations regarding work restrictions and the five percent PPI rating. Appellant's App. pp. 221–22.[1]

Van–Scyoc was examined by Dr. Don Jardine on February 15, 1995. Dr. Jardine found that Van–Scyoc has "clinical right thoracic, left lumbar scoliosis." Appellant's App. p. 182. Dr. Jardine's diagnosis was lumbar strain, superimposed upon advanced degenerative lumbar disc disease in most areas of the lumbar spine. It was Dr. Jardine's opinion that Van–Scyoc's symptoms on the date of examination were related to his October 18, 1994 injury, and he agreed with Drs. Kern's and Biel's conclusions concerning work restrictions and the PPI rating. Dr. Jardine also recommended that Van–Scyoc be evaluated by Dr. Robert Silbert at the Indiana Center for Rehabilitation Medicine, Inc. Appellant's App. p. 183.

Dr. Silbert treated Van–Scyoc from March 16, 1995 to April 19, 1995, and his treatment included epidural steroid injections and physical therapy. An EMG study was conducted and his test results were normal with no evidence of radiculopathy.[2] Appellant's App. p. 66. On April 19, 1995, Dr. Silbert released Van–Scyoc to return to work, with restrictions, including: 1) no floor to waist lifting, 2) no more than thirty minutes of continuous sitting, 3) no more than thirty-five minutes of continuous standing, and 4) no more than twenty minutes of continuous walking. Appellant's App. p. 65. Dr. Silbert also assigned a PPI rating of five percent to Van–Scyoc. Appellant's App. p. 60. After Van–Scyoc was released from Dr. Silbert's care, Mid State's worker's compensation insurance carrier stopped paying temporary total disability benefits to Van–Scyoc.

Due to his continuing pain, Van–Scyoc sought and received treatment from several other medical providers and did not return to work. Subsequently on February 19, 1996, Van–Scyoc filed his Application for Adjustment of Claim with the Board. After filing his claim, Van–Scyoc continued to undergo physical therapy, and on December 31, 1996, he was examined by Dr. F. Shawn Madden. Dr. Madden concluded that Van–Scyoc's pre-existing conditions of degenerative disk disease[3] and spondylolisthesis[4] were asymptomatic until his October 18, 1994 work-related

1. Dr. Biel also indicated that Van–Scyoc "has three of Waddell's signs for non-organic pain." Appellant's App. p. 222. Waddell's signs "indicate psychological basis for the symptoms rather than organic disease or at least that psychological factors are morbidly altering the patient's symptom reporting." See American College of Forensic Examiners International website available at http://www.acfei.com/forensic—examiner-article2.php (last visited April 9, 2003).

2. Radiculopathy, which is synonymous with radiculitis, is a term describing any disease of the spinal nerve roots and spinal nerves. Radiculopathy is characterized by pain which seems to radiate from the spine to extend outward to cause symptoms away from the source of the spinal nerve root irritation. See MedicineNet's website available at http://www.medterms.com (last visited April 9, 2003).

3. As the spine ages, discs in the spine become more fibrous in nature due to loss of water content. Degenerative disc disease develops when, as a result of the loss of water content, settling begins within the disc, and degenerative bone spurs form around the disc, which can cause pain. See Sonoran Spine Center website available at http:// www.sonoranspine.com/ddiscdisease.htm (last visited April 9, 2003).

4. The term spondylolisthesis is used to describe several different spinal disease processes where one vertebra is out of its normal alignment with the adjacent vertebra. The term means "spine slip." See Sonoran Spine Center website available at http:// www.sonoranspine.com/spondylolisthesis.htm (last visited April 9, 2003).

injury. Appellant's App. pp. 243–44. However, Dr. Madden also stated that Van–Scyoc's conditions of disc dehydration and foraminal stenosis [5] were not caused by the injury. When asked whether Van–Scyoc's condition would have progressed absent injury, Dr. Madden indicated that "it's easy to assume that at some point he may have started having trouble because he had foraminal stenosis, which showed that he had the nerve root impingement. So, you would think that at some point he might actually start having some trouble." Appellant's App. p. 273. Essentially, Dr. Madden concluded that Van–Scyoc's pre-existing conditions were asymptomatic and the work-related injury aggravated those conditions.

In 1998, Van–Scyoc began to seek treatment from a psychiatrist for depression, rage, hostility, and impotence. Appellant's App. pp. 442–45. Van–Scyoc has been treated for depression on several occasions for limited periods of time throughout his life. Also, on November 20, 1998, Van–Scyoc was evaluated by Dr. George Lewis. Dr. Lewis assigned a forty-seven percent PPI rating to Van–Scyoc, and Dr. Lewis opined that

> [t]here is a causal relationship between the injury and the patient's physical and mental condition because one occurred because of the other. He is not going to get any better, but just get worse. He has been to all adequate people for evaluation. He has received many treatments, lots of treatments. Some of the treatment has been way beyond what ordinarily would happen. His complaints are even in excess of what ordinarily would be there. The injury has resulted in this gentleman having an impairment so that he has trouble finding gainful employment.

Appellant's App. pp. 302–03.

In 1999, Van–Scyoc was evaluated by a vocational rehabilitation counselor.[6] The counselor noted Van–Scyoc's employment history, which generally consisted of building construction, roadway construction, and carpentry. The counselor determined that due to Van–Scyoc's age, work history, functional capacity evaluations, participation in vocational rehabilitation, and his failed work attempt,[7] "there are no reasonable forms of employment to which he can avail himself, using the terms as contemplated by the Worker's Compensation Act of Indiana." Appellant's App. p. 340.

A hearing was held before a single hearing member on November 4, 1999.[8] The parties stipulated that the only issues before the hearing member were 1) whether Van–Scyoc was permanently totally disabled as a result of the October 18, 1994 injury; 2) whether, in the alternative, he is

---

5. Foraminal stenosis, a term describing the narrowing of the cervical disc space, is caused by enlargement of a joint in the spinal canal. *See* Spine Health.com website available at http://www.spinehealth.com/topics/cd/overview/cervical/cerv02.html (last visited April 9, 2003).

6. We also note that in 1996 Van–Scyoc was evaluated by a counselor with the FSSA's Division of Disability, Aging, and Rehabilitative Services, who concluded that as of February 27, 1996, Van–Scyoc "cannot even tolerate part-time work" due to his continued pain and work restrictions. Appellant's App. p. 87.

7. At some point after he was released to return to work, Van–Scyoc worked as a third-shift security guard for three or four months, but his employment was eventually terminated because he was physically unable to do the job. Appellant's App. p. 316.

8. The three and one-half year delay between the date of filing the Application and Adjustment of Claim and the hearing date is the result of numerous continuances filed by both Mid State and Van–Scyoc.

entitled to an award of PPI benefits; 3) whether he is entitled to an award of past medical expenses; and 4) whether he is entitled to an award of future medical benefits. Appellant's App. p. 6. Van–Scyoc argued that he was permanently totally disabled as a result of his October 18, 1994 injury. He testified that prior to the October 18, 1994, injury he had never been injured or suffered any back pain that kept him from working. Tr. p. 34.

On October 3, 2000, after reviewing Van–Scyoc's medical records and medical testimony, Functional Capacity Evaluations, and testimony and reports from vocational experts, the hearing member issued his findings and conclusions, which provide:

1. The treating physician, Dr. Kern, diagnosed a lifting injury and after care, including physical therapy, medical, a CT scan and an MRI, he found Van–Scyoc to be at MMI [i.e., maximum medical improvement] and assessed a permanent partial impairment rating of five percent (5%) of the whole person on January 9, 1995.

2. At Defendant's request, Dr. Biel examined Plaintiff; he diagnosed lumbar strain and degenerative lumbar disc problems; he agreed Plaintiff was MMI and assessed a PPI rating of five percent (5%) of the whole person.

3. At Plaintiff's request, the IME doctor, Dr. Jardine, diagnosed lumbar strain superimposed on advanced degenerative disc disease; he concluded there was a question whether he is at medical quiescence and referred Plaintiff to Dr. Silbert.

4. On April 20, 1995, Dr. Silbert found Plaintiff at MMI and assessed a PPI rating of five percent (5%) of the whole person.

5. Dr. Kern had Plaintiff evaluated and treated at Progressive Physical Therapy, who did an FCE [i.e., Functional Capacity Evaluation] and set permanent restrictions.

6. As Plaintiff notes, Dr. Biel agreed with these restrictions.

8. Plaintiff's doctor, Dr. Madden, assessed a PPI rating of forty-one percent (41%), but opined twenty percent (20%) at her deposition, and finally said some doctors might have given ratings as low as five percent (5%).

9. Dr. Madden thought Plaintiff's arthritis was asymtomatic [sic] prior to his October 18, 1994 accident, but stated many of his specific problems, i.e. disc dehydration, were not caused by the accident.

10. Plaintiff sought Dr. Lewis' opinion; Dr. Lewis assessed a PPI of forty-six percent (46%); he found a causal relationship between the injury and Plaintiff's condition.

11. Plaintiff underwent multiple FCE evaluations imposing substantial lifting, sitting, and standing positions.

12. Indiana Vocational Rehabilitation Services found Plaintiff could not perform even part-time work as of February 27, 1996.

13. Much of Plaintiff's inability to work is related to complaints of pain; and all of Plaintiff's complaints cannot be objectively verified and his physical condition does not correspond with this [sic] complaints.

14. For example, Plaintiff has had extensive complaints of testicular and abdominal pain with appropriate tests revealing no abnormalities.

15. For most of his adult life, after one year of college, Plaintiff performed

heavy manual labor jobs, more related to the construction and building trades, but including farm and factory work.

### CONCLUSIONS

1. Van–Scyoc sustained a work-related injury on October 18, 1994.

2. Defendant accepted responsibility and provided statutory and medical care and TTD.

3. Van–Scyoc is permanently partially impaired as a result of his work injury; he is entitled to compensation for five degrees of impairment to the whole person.

4. Van–Scyoc is not entitled to reimbursement for unauthorized medical care.

5. Van–Scyoc is not entitled to future medical expenses.

6. Van–Scyoc is not disabled as a result of his work injury.

Appellant's App. pp. 6–8.

Therefore, the hearing member awarded to Van–Scyoc compensation at the statutory rate for his five percent PPI rating. Van–Scyoc appealed the hearing member's award to the full Board. The Board heard the appeal on May 14, 2002, and on June 3, 2002, the Board adopted the hearing member's award. However, three of the seven Board members dissented. Van–Scyoc now appeals.

### Standard of Review

 In this appeal, Van–Scyoc faces a highly deferential standard of review. When we review a judgment issued by the Board, we are bound by the Board's findings of fact and will not disturb its judgment unless the evidence is undisputed and leads undeniably to a contrary conclusion. *Shultz Timber v. Morrison,* 751 N.E.2d 834, 836 (Ind.Ct.App.2001), *trans. denied; see also Hill v. Worldmark Corp./*

*Mid Am. Extrusions Corp.,* 651 N.E.2d 785, 787 (Ind.1995) ("Unless the evidence is 'undisputed and leads inescapably' to a result contrary to the Board's finding, it will be affirmed."). We will not reweigh the evidence nor judge the credibility of the witnesses. *Morrison,* 751 N.E.2d at 836.

Rather, we examine the record only to determine whether there is any substantial evidence and reasonable inferences which can be drawn therefrom to support the Board's findings and conclusions. Only if the evidence is of a character that reasonable [people] would be compelled to reach a conclusion contrary to the decision of the Board will it be overturned.

*Perez v. U.S. Steel Corp.,* 428 N.E.2d 212, 216 (Ind.1981).

### Discussion and Decision

 The Indiana Worker's Compensation Act requires employers to provide their employees with "compensation for personal injury or death by accident arising out of and in the course of the employment." Ind.Code § 22–3–2–2 (1991). An accident occurs in the course of employment when it happens at a place where the employee may reasonably be, within the period of employment, and while the employee is fulfilling the duties of employment. *Tanglewood Trace v. Long,* 715 N.E.2d 410, 413 (Ind.Ct.App.1999), *trans. denied.* An injury arises out of employment when there is a causal relationship between the employment and the injury. *Muncie Ind. Transit Auth. v. Smith,* 743 N.E.2d 1214, 1216 (Ind.Ct.App.2001). As the party seeking benefits, Van–Scyoc bears the burden to prove that his injury arose out of and in the course of employment. *Long,* 715 N.E.2d at 413. Ultimately, the issue of whether an employee's injury arose out of and in the course of his

employment is a question of fact to be determined by the Board. *Conway ex rel. Conway v. Sch. City of East Chicago,* 734 N.E.2d 594, 597 (Ind.Ct.App.2000), *trans. denied.*

We also note that "[i]t is the duty of the Worker's Compensation Board, as trier of fact . . . , to make findings which reveal its analysis of the evidence and are specific enough to permit intelligent review of the Board's decision." *Smith v. Bob Evans Farms, Inc.,* 754 N.E.2d 18, 23 (Ind.Ct.App.2001), *trans. denied* (quoting *K–Mart Corp. v. Morrison,* 609 N.E.2d 17, 27 (Ind.Ct.App.1993), *trans. denied*). "Specific findings of basic fact must reveal the Board's determination of the various relevant sub-issues and factual disputes which, in their sum, are dispositive of the particular claim or ultimate factual question before the Board." *Outlaw v. Erbrich Prods. Co.,* 742 N.E.2d 526, 530–31 (Ind. Ct.App.2001) (citing *Perez v. U.S. Steel Corp.,* 426 N.E.2d 29, 33 (Ind.1981)).

The Board's findings must be specific enough to supply the reader with an understanding of its reasons, based on the evidence, for its finding of ultimate fact. *Id.* at 531.

> The purpose of the Board issuing findings of fact is to create a road map so that the readers of the opinion—including this court—can clearly follow the reasoning used by the Board to reach its ultimate conclusion. When the findings of fact are straightforward and detailed, the Board's position is bolstered; however, when the Board's findings are vague and incomplete, it results in guesswork on the part of the readers of the decision.

*Outlaw v. Erbrich Prods. Co.,* 758 N.E.2d 65, 68 (Ind.Ct.App.2001). "The more complex or technical the sub-issues or factual disputes are in any claim, the greater the particularity which is needed to satisfy the various purposes of the requirement." *Outlaw,* 742 N.E.2d at 531. Where the factual dispute involves complex medical issues, the Board is required to issue particularly detailed findings. *Id.*

Van–Scyoc contends that he presented sufficient evidence to the Board via medical records and testimony, Functional Capacity Evaluations, and vocational rehabilitation experts to establish that as a result of the October 18, 1994 injury, he is severely limited in the types of activity he can perform, and that he cannot perform any reasonable types of employment. Therefore, he argues that he has established a permanent total disability and is entitled to permanent total disability benefits. Mid State responds that Van–Scyoc failed to prove that a causal relationship exists between the work-related injury and his disability. Mid State concedes that Van–Scyoc is permanently disabled, *see* Br. of Appellee at 13, but contends that Van–Scyoc's disability is the result of pre-existing conditions and is not related to the compensable injury he suffered on October 18, 1994.

In support of his argument that his permanent disability was caused by the work-related injury, Van–Scyoc relies on the following evidence presented to the Board: 1) Van–Scyoc never had any back problems that required treatment or kept him from working prior to the October 18, 1994 injury; 2) Van–Scyoc was performing heavy manual labor at the time of the injury despite any pre-existing condition; 3) the work restrictions imposed by Dr. Kern; 4) Dr. Jardine's assessment that the work restrictions imposed by Dr. Kern were appropriate and his opinion that Van–Scyoc's condition as of February 27, 1995, was related to the October 18, 1994 injury; 5) Dr. Madden's testimony that his pre-existing conditions were asymptomatic and the work-related injury aggravated

those conditions; and 6) Dr. Lewis's statement that Van–Scyoc's work-related injury resulted in an impairment, which has resulted in Van–Scyoc's inability to obtain gainful employment. In sum, Van–Scyoc argues that the work restrictions imposed by Dr. Kern were imposed as a result of the October 18, 1994 injury, and because of those restrictions there are no reasonable forms of employment to which he can avail himself.

 Initially, we note the general principle that an " 'employer takes an employee as he finds him.' " *U.S. Steel Corp. v. Spencer,* 655 N.E.2d 1243, 1247 (Ind.Ct. App.1995), *trans. denied,* (quoting *Goodman v. Olin Matheison Chem. Corp.,* 174 Ind.App. 396, 405, 367 N.E.2d 1140, 1146 (1977)). "An injury otherwise compensable under the Workmen's Compensation Act entitles an employee to benefits commensurate with the total disability sustained, including the aggravation or triggering of latent pre-existing conditions." *Hansen v. Von Duprin, Inc.,* 507 N.E.2d 573, 577 (Ind.1987).

 We also observe that pursuant to the Apportionment Statute found at Indiana Code section 22–3–3–12, where an employee has a pre-existing impairment or disability which combines with a subsequent compensable work-related injury resulting in further impairment or disability, the employer is not liable for that portion of the injury not directly related to its employment. *U.S. Steel,* 655 N.E.2d at 1247 (citation omitted). However, the Apportionment Statute "does not apply to the exacerbation or aggravation of a pre-existing but nonimpairing and nondisabling condition of the body." *Id.* (citation omitted).

In *U.S. Steel,* the employer argued that the Board should have applied the Apportionment Statute when it determined the employee's award because there was evidence that he had injured his back ten years before the compensable work-related injury and that medical procedures undergone to correct the previous injury were not successful. *U.S. Steel,* 655 N.E.2d at 1245–46. The employer also presented evidence that the employee received continuous medical treatment for the condition up to the date of the subsequent work-related injury. *Id.* at 1245. In addressing the employer's argument that the statute should have been applied, we noted that

fairness dictates that the employer should only be responsible for compensating those injuries which result solely from events within its employ. The Apportionment Statute furthers this policy by providing that if an employee comes to an employer with a pre-existing impairment or disability which combines with a subsequent accident to result in further impairment or disability, the employer will not be liable for that portion of the injury not directly related to its employment. On the other hand, if an employee has merely common ailments, i.e., back pain as Spencer was found by the Board to suffer from here, but thereafter falls victim to a workplace accident, it would not be just to deny such employee compensation for his injury because he did not come to his employer as a mentally and physically perfect employee even if such perfect employee would not have sustained the same injury. In sum, the statute attempts to separate those injuries which merely combine with pre-existing impairments or disabilities to render an employee disabled, and those disabilities which are, in fact, merely aggravations of pre-existing impairments or disabilities, from those injuries which occur, perhaps to mentally and physically imperfect employees, solely from events at the current employer's workplace.

*Id.* at 1247–48 (citing *Rockwell Intern. v. Byrd,* 498 N.E.2d 1033, 1038 (Ind.Ct.App. 1986) (Apportionment not proper even though employee had a susceptibility to back injury where Board found employee did not have pre-existing back impairment or disability.); *Bethlehem Steel Corp. v. Cummings,* 160 Ind.App. 160, 162, 310 N.E.2d 565, 567 (1974) (Claimant who had a physical condition rendering him more susceptible to injury rather than an existing impairment or disability was entitled to recover for the full extent of injury.)).

Our court concluded that the Board properly determined that it was not required to apply the Apportionment Statute because the employee's "condition was not of the sort which would normally progress to disability on its own." *Id.* at 1248. We also noted that the evidence supported the Board's finding that it was the work-related injury which rendered the employee disabled even though he was susceptible to back injury particularly where the employee was able to perform "hard arduous labor" during the ten years prior to the work-related injury. *Id.*

 In this case, the evidence is undisputed that prior to the October 18, 1994 injury, Van–Scyoc had never suffered any injury to his back or back pain that kept him from working. Also, for most of his adult life, Van–Scyoc has been employed as a heavy laborer. As a result of his work-related injury, Dr. Kern imposed work restrictions on Van–Scyoc, and several other doctors agreed that those restrictions were appropriate. Furthermore, Van–Scyoc submitted reports from vocational rehabilitation experts that due to his work restrictions and continuing pain, Van–Scyoc is unable to obtain and perform reasonable types of employment. As we noted above, in their brief, Mid State concedes that Van–Scyoc is permanently totally disabled.

In its findings, the Board has failed to discuss whether the work restrictions imposed on Van–Scyoc were the result of the October 18, 1994 injury, his pre-existing conditions, or both. The Board also failed to address 1) the medical evidence presented that Van–Scyoc's work-related injury aggravated his pre-existing conditions,[9] and 2) the undisputed evidence that Van–Scyoc never had any back injury or suffered any back pain prior to the October 18, 1994 injury that kept him from working. Also, the Board failed to address whether Van–Scyoc's pre-existing conditions would have normally progressed to disability absent any aggravating injury. Due to these deficiencies in the Board's findings, it is impossible to determine whether the Board considered those issues in reaching its decision, and we are therefore unable to conduct meaningful appellate review.

Thus, although neither party raised the issue of specificity of the findings in this appeal, we remand this case to the Board to enter more specific findings consistent with this opinion.[10] On remand, we re-

9. In *Smith v. Henry C. Smithers Roofing Co.,* 771 N.E.2d 1164, 1169 (Ind.Ct.App.2002), we remanded the case because we concluded that it was "impossible to determine, from the findings set out above whether the hearing judge adequately considered, or considered at all, whether the accident aggravated Smith's pre-existing condition."

10. We also note that in *Perez* our supreme court determined that "findings of basic fact

must reveal the Board's analysis of the evidence and its determination therefrom regarding the various specific issues of fact which bear on the particular claim." 426 N.E.2d at 33. The court then stated that

"statements to the effect that 'the evidence revealed such and such ...,' that 'Mr. Jones testified so and so ...,' or that 'the Industrial Board finds Dr. Smith testified so and so ...,' " are not findings of basic fact in the

mind the Board that the issue of physical impairment concerns medical evidence relating to the loss of bodily function, whereas a disability determination rests on vocational factors relating to the ability of an individual to engage in reasonable forms of work activity. *U.S. Steel Corp. v. Spencer,* 645 N.E.2d 1106, 1109 (Ind.Ct.App.1995).

Remanded for proceedings consistent with this opinion.

KIRSCH, J., and MATTINGLY MAY, J., concur.

**M.T., Appellant–Respondent,**

**v.**

spirit of the requirement. Statements of that nature lend perspective to our task, but in no way indicate what the Board found after examining all the evidence. The inclusion of statements of that nature is not harmful error, but rather mere surplusage. *Id.*