STEVEN G. THOMAS, Appellant-Plaintiff,
v.
ELGIN ROOFING CO., Appellee-Defendant.
No. 93A02-0606-EX-498
Court of Appeals of Indiana.
December 12, 2006.
KATHLEEN K. SHORTRIDGE, ANN H. STEWART, Ice Miller, LLP, Indianapolis, Indiana, ATTORNEYS FOR APPELLANT.
STEVEN W. ETZLER, Schreiner, Malloy & Etzler, P.C., Highland, Indiana, ATTORNEY FOR APPELLEE.

MEMORANDUM DECISION
RILEY, Judge.

STATEMENT OF THE CASE
Appellant-Plaintiff, Steven G. Thomas (Thomas), appeals the Worker's Compensation Board of Indiana's (the Board) determination that he was not injured in the course of his employment with Appellee-Defendant, Elgin Roofing Company (Elgin).
We affirm.

ISSUE
Thomas raises one issue on appeal, which we restate as: Whether the Board properly found that Thomas was not injured in an accident arising out of or in the course of his employment with Elgin.

FACTS AND PROCEDURAL HISTORY
On February 3, 2003, Thomas filed a Worker's Compensation claim with the Board, alleging injuries resulting from his employment with Elgin during October of 2002. On April 8, 2004, a Single Member hearing was held on Thomas' claim. It was determined that Thomas' injuries were unrelated to his employment with Elgin. On February 11, 2005, Thomas filed an Application for Review by the Full Board. On May 9, 2006, also determining that Thomas' injuries were not related to his employment with Elgin, the Full Board entered the following Findings of Fact and Conclusions of Law:
1. [Thomas] was a journeyman roofer hired out of a local union hall to work on a roofing project at Munster Food Market in Munster, Indiana on October 14, 2002.
2. [Thomas] had not worked from September 1999 to October 2002 due to a prior work-related [lower] back injury.
3. [Thomas] underwent a L5-S1 laminectomy at the hands of Robert S. Martino, M.D. [(Dr. Martino)] on November 20, 2001, approximately two (2) years after his September 1999 work injury.
4. On April 5, 2002[,] Dr. Martino reported that [Thomas] would [be] unable to return to a heavy roofing employment [position].
5. Dr. Martino, however, released [Thomas] without restrictions on June 3, 2002 and assessed a twenty-five percent (25%) whole person impairment. ([Thomas] was also involved in an intervening automobile accident in January 2002[,] which slowed his recovery).
6. [Thomas] was unable to secure employment from the time of his release until October 14, 2002.
7. [Thomas] testified at [the Board's] hearing that he had attempted to keep himself in shape doing home exercises from the time of his first back injury in September 1999 until his return to work for [Elgin] in October 2002.
8. [Thomas] testified at [the Board's hearing] that on October 21, 2002 he was assigned the duties of spreading river rock on a roof and "rolling" the bundles of insulation, weighing one hundred (100) pounds each, out of the way.
9. [Thomas] did not testify about any particular incident or acute event on October 21, 2002 that caused immediate [lower] back pain.
10. During his deposition taken April 4, 2003[,] [Thomas] testified that he returned to the work site on the next day, October 22, [2002], but there were too many workers. [Thomas] was assigned to work on the ground unloading cranes. Thereafter, [Thomas] testified that his job with [Elgin] ended.
11. At deposition, [Thomas] testified that he called [Elgin] to get an "Injured Accident Report" mailed to him. Therein, he complained generally of "Back-Neck-Legs-Arms" injuries.
12. [Thomas'] complaints, as referenced in [Elgin's] Accident Report, are general, encompassing most of his body and do not reference the onset of immediate [lower] back pain with respect to the activities surrounding October 21, 2002.
13. On [October 29, 2002, Thomas] saw Dr. Scott Andrews for complaints of back pain radiating upwards. Dr. Andrews recommended a cardiovascular fitness program and a [lower] back strengthening program. [Thomas] was to return to see Dr. Martino.
14. On January 9, 2003[, Thomas] was admitted to St. Margaret Mercy Hospital after falling out of bed and being found unconscious by his girlfriend. [Thomas] apparently had a subsequent seizure and suffered a fracture of his humerus while hospitalized.
15. During a psychiatric evaluation, [Thomas] gave a history of THC, cocaine, opiate and alcohol use.
16. During his hospitalization[, Thomas] experienced hallucinations and had to be restrained and was given antipsychotic medication due to agitation.
17. [Thomas] was diagnosed with seizure disorder possibly secondary to polysubstance abuse, right humeral fracture of head and neck, acute bronchitis, hyponatremia, hypokalemia and head laceration.
18. [Thomas] signed himself out voluntarily on January 14, 2003.
19. On or about January 27, 2003[, Thomas] returned to Dr. Martino having had an MRI which Dr. Martino stated "showed enhancement, more of a scar than not." Dr. Martino recommended an epidural.
20. On February 14, 2003[,] Dr. Martino examined [Thomas] and noted that [Thomas] had negative straight leg raising. [Thomas] now complained of pain radiating down his right leg. Dr. Martino recommended physical therapy.
21. On January 15, 2004[, Thomas] saw Marc Levin, M.D. [(Dr. Levin)] for an "independent medical examination." [Thomas] complained of [lower] back pain radiating into his left buttock and leg.
22. Dr. Levin reported that the January 2003 MRI showed (report not provided to the Board) L5 disc herniation and degenerative changes.
23. Dr. Levin incorrectly notes that [Thomas] returned to work after his first L5-S1 surgery for three (3) years without difficulty prior to this alleged injury. Dr. Levin recommended a lumbar myelogram with CT.
24. On March 4, 2004[,] Dr. Levin opined that myelogram results showed a second L5 disc herniation compressing on the left S1 nerve and is "an aggravation of a pre-existing condition" that may require surgical intervention.
CONCLUSIONS OF FACT AND LAW
1. [Thomas'] initial report of a work-related injury occurred after a brief return to work following a three (3) year period wherein [he] did not work due to a prior work-related L5-S1 herniation requiring surgery and long recuperation.
2. [Thomas] did not report an acute episode with respect to his work activity with [Elgin]. Rather, he described conditions affecting multiple body parts. Further, [Thomas] returned to work and completed the job before being laid off.
3. [Thomas'] initial treating physician, Dr. Andrews, recommended a cardiovascular and [lower] back [strengthening program for Thomas' primary complaints of lower] back pain radiating upwards. [Thomas] had been off work for three (3) years and required reconditioning.
4. Prior to a second MRI, [Thomas] suffered a seizure and fall requiring psychiatric hospitalization during which he had to be restrained, administered anti-psychotic medication[,] and suffered a fractured humerus.
5. After his hospitalization[, Thomas'] primary complaint had changed to [lower] back pain radiating down his right leg. MRI showed degenerative changes and scarring at L5-S1, site of [Thomas'] earlier micro discectomy.
6. Dr. Levin's opinion that [Thomas] suffered an aggravation of a pre-existing condition during his employment with [Elgin] is based on erroneous information and an examination eighteen (18) months after the alleged injury [and] after violent episodes associated with a psychiatric hospitalization, to which Dr. Levin does not refer and about which Dr. Levin may not have been aware.
7. [Thomas] is unable to meet his burden of proof that his second L5 herniation arose out of and in the course of his brief employment with [Elgin] rather than from other causes, such as ongoing degeneration or the events of [his] subsequent psychiatric hospitalization.
IT IS THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Full Worker's [C]ompensation Board of Indiana that [Thomas] shall take nothing by way of his Application for Adjustment of Claim filed February 3, 2003.
(Appellant's App. pp. 25-28).
Thomas now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION
Thomas contends that the Board erred in finding that he was not injured in the course of his employment with Elgin. Specifically, Thomas asserts that the Board wrongfully concluded that the medical evidence presented does not support a determination that his injuries were directly related to his work as a roofer for Elgin.

I. Standard of Review

In challenging the Board's findings, an appellant faces a deferential standard of review. Graycor Industrial v. Metz, 806 N.E.2d 791, 797 (Ind. Ct. App. 2004), trans. denied. When reviewing an appeal from the Worker's Compensation Board, this court is bound by the Board's findings of fact and may consider only errors in the Board's conclusions of law. Id. "However, we may disturb the Board's factual determinations if we determine that the evidence is undisputed and leads inescapably to a result contrary to the one reached by the Board." Id. (quoting Indiana Michigan Power Company v. Roush, 706 N.E.2d 1110, 1113 (Ind. Ct. App. 1999), reh'g denied, trans. denied).
In reviewing the Board's decision, we employ a two-tiered standard: (1) we examine the evidence in the record for competent evidence of probative value to support the Board's findings, and (2) we examine the findings to determine whether they are sufficient to support the decision. Graycor, 806 N.E.2d at 797. The findings must be stated with ample specificity with regard to contested issues so as to allow for intelligent review. Id. at 797-98. In our review, we will neither reweigh evidence nor assess the credibility of witnesses; further, we will consider only the evidence most favorable to the Board's decision, together with all reasonable inferences. Id. at 798. We review questions of law de novo. Stump Home Specialties Mfg. v. Miller, 843 N.E.2d 18, 21 (Ind. Ct. App. 2006).

II. Worker's Compensation Claims

The Worker's Compensation Act authorizes the payment of compensation to employees for "personal injury or death by accident arising out of and in the course of the employment." Ind. Code § 22-3-2-2(a); Manous v. Manousogianakis, 824 N.E.2d 756, 763 (Ind. Ct. App. 2005). An injury "arises out of" employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. Manous, 824 N.E.2d at 763. The nexus is established when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment, or when the facts indicate a connection between the injury and circumstances under which the employment occurs. Id. An accident occurs "in the course of employment" when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto. Id.
To receive worker's compensation benefits, a claimant must prove both elements, i.e. that the injury arose out of and in the course of employment  neither element alone is sufficient. Kehr Mid-West Iron v. Bordner, 829 N.E.2d 213, 215 (Ind. Ct. App. 2005); Manous, 824 N.E.2d at 763. Whether an injury arises out of and in the course of employment is a question of fact to be determined by the Board. Manous, 824 N.E.2d at 763. The person who seeks worker's compensation benefits bears the burden of proving both elements. Id.

III. Medical Evidence

A. Dr. Levin's Report

Thomas first argues that the Board failed to give Dr. Levin's medical report, which states that Thomas' injuries are related to his work as a roofer, proper credence. Specifically, Thomas asserts that the Board wrongfully inferred that Dr. Levin did not have knowledge of Thomas' history of seizures when he evaluated Thomas. Thus, Thomas contends that this improper inference by the Board misguided its decision, and led to an unjustified lack of confidence in the report.
Initially, we remind Thomas that our standard of review does not allow us to reweigh the evidence. See Graycor, 806 N.E.2d at 798. Thus, whether the Board gave sufficient credence to Dr. Levin's report is not an issue susceptible to our review. In addition, our review of Dr. Levin's report reflects a discussion of Thomas' past medical history without any mention of his history of seizures. Therefore, we cannot conclude that the Board was unreasonable in inferring that Dr. Levin may not have been aware of Thomas' entire medical history during the examination. Accordingly, we find no merit in this argument.

B. Cumulative Medical Evidence

Next, Thomas expands his previous contention, and argues that the Board erred in concluding that he did not present sufficient evidence that his injuries were connected to his employment with Elgin. Specifically, Thomas contends once more that the Board improperly ignored evidence of his injury, which was substantiated by 1) Dr. Levin's report, and 2) various reports from Dr. Martino, which stated that his second L5 herniation was attributable to his work as a roofer.
As previously stated, the Worker's Compensation Act provides for compensation of employees who are injured by an "accident arising out of and in the course of employment." Manous, 824 N.E.2d at 763. Here, as Thomas alleges he was injured while working on-site for Elgin at the Munster Food Mart on October 21, 2002, whether the accident occurred "in the course of" his employment does not appear to be an issue. See id. Rather, the question before us is whether there was sufficient evidence to support the Board's finding that Thomas did not suffer an injury arising out of his employment with Elgin. As we explained above, an injury "arises out of employment" when a causal nexus exists between the injury sustained and the duties or services performed by the employee. Id. The nexus is established when a reasonably prudent person considers the injury resulted from a risk incidental to the employment, or when the facts disclose a connection between the injury and the circumstances of employment. Id.
The risks incidental to employment fall into three categories: (1) risks distinctly associated with employment, (2) risks personal to the claimant, and (3) risks neither distinctly associated with employment nor distinctly personal in character. Id. Risks in the first category are those intuitively thought of as work-related; risks in the second category are those "caused by a pre-existing illness or condition unrelated to employment;" and risks in the third category are considered "neutral risks." Id. (quoting Milledge v. Oaks, 784 N.E.2d 926, 930-31 n.1 (Ind. 2003)). Risks in the first and third categories are generally compensable, while risks personal to the claimant are not. Manous, 824 N.E.2d at 763.
In the present case, common knowledge leads us to infer that due to such tasks as lifting heavy materials and working on heightened surfaces, Thomas' line of employment, i.e. roofing, carries a certain risk of injury. However, while there are risks distinctly due to the job of being a roofer, in Thomas' case, there was also a personal risk of re-injury associated with his previous work-related injury and whole body impairment of 25%. Particularly, a review of the record indicates that in 1999, Thomas suffered a lower-back injury related to his work as a roofer for an employer other than Elgin, and that he underwent surgery related thereto in 2001. The record further shows that when Thomas was released from Dr. Martino's care in June of 2002, he was determined to have a 25% whole person impairment as a result of the 1999 injury. Therefore, the risks Thomas faced as a roofer were associated with both the type of employment and his personal risk of injuring an already "bad back." Accordingly, if we were to categorize Thomas' alleged injury, it would be neither distinctly related to the job, nor distinctly related to his personal back problems  in other words, "neutral." See id.
At this juncture, we choose to briefly discuss the impact of a second injury upon a pre-existing injury, and note the general principle that an "employer takes an employee as he finds him." See Van-Scyoc v. Mid-State Paving, 787 N.E.2d 499, 507 (Ind. Ct. App. 2003). "An injury otherwise compensable under the Workmen's Compensation Act entitles an employee to benefits commensurate with the total disability sustained, including the aggravation or triggering of latent pre-existing conditions." Id. However, we also observe that pursuant to I.C. § 22-3-3-12 (the "Apportionment Statute"), where an employee has a pre-existing impairment or disability which combines with a subsequent compensable work-related injury resulting in further impairment or disability, the employer is not liable for that portion of the injury not directly related to its employment. See Van-Scyoc, 787 N.E.2d at 507. Nevertheless, this statute "does not apply to the exacerbation or aggravation of a pre-existing but non-impairing and non-disabling condition of the body." Id.
In previously analyzing the Apportionment Statute, we have noted that fairness dictates that the employer should only be responsible for compensating those injuries that result solely from events within its employ. Id. Thus, if an employee comes to an employer with a pre-existing impairment, as Thomas did, and is subsequently injured on the job resulting in further impairment or disability, the employer will not be liable for that portion of the injury not directly related to its employment. Id.
Therefore, in Thomas' case, if sufficient evidence exists to support the conclusion that Thomas's second injury was work-related, Elgin would be responsible for only the additional impairment Thomas suffered as a result of the second injury. However, the crux of the issue before us is that the Board did not find sufficient evidence that the second injury was connected to Thomas' work as a roofer for Elgin.
Our own review of the record corroborates the medical evidence set forth in Thomas' argument on this appeal, including Dr. Levin's report, which states that Thomas' re-occurrence of lower back pain in October of 2002 was "related to the type of work that [Thomas] does." (Appellant's App. p. 12). In addition, our review of Dr. Martino's reports discloses that he determined Thomas suffered a separate injury in October of 2002, unrelated to any previous lower back injury and which contributed to an additional 25% whole person impairment.
Nevertheless, our own review cannot be reweighed against the evidence in the record that supports the Board's decision that Thomas' second L5 herniation was not related to his employment with Elgin. See Graycor, 806 N.E.2d at 798. First, in both our review of the accident report Thomas submitted to Elgin and our review of Thomas' testimony at the Single Member hearing, we fail to find that Thomas identified a distinct incident that caused his injuries. Rather, in the report and at the hearing, Thomas merely stated that he injured his back, neck, legs, and arms either by moving bundles of insulation or by pushing a gravel cart. Second, the record reveals that Thomas did not seek medical attention until more than a week after the alleged injury, when he saw Dr. Andrews on October 29, 2002. A review of Dr. Andrews' assessment on that date shows that Dr. Andrew noted that the numbness Thomas complained of in his right leg had persisted since Thomas had back surgery in 2001. Furthermore, in evaluating Dr. Levin's report, we observe that it is vague in nature and merely categorizes Thomas' back injury as "related to the type of work [he] does," but does not refer to any specific work-related injury on any specific date. Additionally, as noted by the Board, Dr. Levin did not evaluate Thomas until January of 2004, more than one year after the alleged injury took place at the Munster Food Mart. Moreover, the record shows that Thomas testified that he went back to work for Elgin the day after he was allegedly injured.
In sum, we note several circumstances that make it difficult to apportion Thomas' impairment between his prior injury and the injury alleged to have taken place when he was briefly employed by Elgin. Therefore, because Elgin can only be held responsible for the portion of Thomas' injury attributable to their employment of him and there is insufficient evidence of that injury's connection to such employment, we conclude that the Board properly determined that Thomas' injuries did not arise out of and in the course of his employment with Elgin. See Van-Scyoc, 787 N.E.2d at 507.

CONCLUSION
Based on the foregoing, we conclude that the Board properly denied Thomas' Worker's Compensation claim.
Affirmed.
BAILEY, J., and MAY, J., concur.