**Susan K. ZIKE, Appellant–Plaintiff,**

v.

**ONKYO MANUFACTURING, INC., Appellee–Defendant.**

**No. 93A02–9306–EX–292.**

Court of Appeals of Indiana, Third District.

Nov. 18, 1993.

Stephen W. Voelker, Voelker Law Office, Jeffersonville, for appellant-plaintiff.

Stephen L. Bola, Hill, Fulwider, McDowell, Funk & Matthews, P.C., Indianapolis, for appellee-defendant.

HOFFMAN, Judge.

Appellant-plaintiff Susan Zike appeals the decision of the full Worker's Compensation Board of Indiana denying her claim under the Occupational Diseases Act.

The evidence relevant to the appeal discloses that in August 1989, while working at Onkyo, Zike was exposed to soldering fumes. As a result, Zike developed hypersensitized pneumonitis. Her last day of work was August 28, 1989. On November 22, 1989, Zike was discharged after her treating physician opined that she could no longer work near fumes. Zike then received temporary total disability benefits for twenty-one and four-sevenths weeks. The disability benefits she received totalled $2,991.56.

Zike filed her application for an adjustment of her claim on March 21, 1991. Zike claimed that she could not return to her regular job at Onkyo or one of a similar kind or character. Accordingly, she requested continuing temporary total disability.

On August 13, 1992, after a hearing before a single member of the Worker's Compensation Board, Zike's claim was denied. The single member determined, in part:

"It is further found that from all reasonable medical evidence the plaintiff suffers from hypersensitivity to exposures at Onkyo such as soldering fumes and from glue and chemicals.

This condition renders her incapacitated to a point she can no longer engage in her full-time employment at Onkyo; however, when the plaintiff removes herself from the atmospheric condition at Onkyo, the condition after approximately two weeks subsides and the plaintiff is no longer incapacitated.

It is further found that this condition is specifically connected to Onkyo and is not one that renders her incapacitated from other types of employment, and as such, the plaintiff is not entitled to a continuation of temporary total disability benefits since her condition is not permanent nor ongoing so long as she does not work within a certain area at Onkyo; thus the plaintiff is not entitled to further disability benefits."

Pursuant to Zike's request, the matter was heard by the full Board. On May 21, 1993, the Board adopted the decision of the single member denying Zike's claim. This appeal ensued. Other facts appear below as necessary to the analysis.

On appeal, Zike alleges that the Board erred in denying her claim and treating the claim as one for worker's compensation benefits, rather than one for benefits under the Occupational Diseases Act. Also, Zike contends that 1991 amendments to IND. CODE § 22–3–7–16(b) should be applied to her case.

As acknowledged by Zike and Onkyo, the Worker's Compensation Board, as trier of fact, is charged with making findings which both reveal its analysis of the evidence and are sufficiently specific to permit intelligent review of its decision. *K–Mart Corp. v. Morrison* (1993), Ind. App., 609 N.E.2d 17, 27. A court reviewing the Board's decision will neither weigh the evidence nor assess the credibility of witnesses and will consider only the evidence most favorable to the award, together with all reasonable inferences deducible from the proven facts. *Id.* A two-tier standard of review is required to determine the existence of competent evidence of probative value to support the Board's findings and whether the findings are sufficient to support the decision. *Id.*

However in the present case, Zike contends that the Board's decision rests upon an interpretation of Worker's Compensation law rather than the Occupational Diseases Act. "Disability" and "disablement" are defined in the Occupational Diseases Act. IND. CODE § 22–3–7–9(e) (1988 Ed.) provides:

"As used in this chapter, 'disablement' means the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease by the employer from whom he claims compensation or equal wages in other suitable employment, and 'disability' means the state of being so incapacitated."

The standards for assessing "disability" and "disablement" are not identical under Worker's Compensation law and the Occupational Diseases Act. *Spaulding v. International Bakers Serv.* (1990), Ind., 550 N.E.2d 307, 308–310. In *Spaulding* the court determined:

"We therefore conclude that, under the Occupational Diseases Act, 'disability' refers to the loss of wage-earning ability and that entitlement to compensation for 'total permanent disability' rests upon a showing that a claimant is permanently unable to earn any wages at his or her last work or in 'other suitable employment.' Ind.Code § 22–3–7–9(e). While such a determination may involve considerations similar to those used in assessing 'total permanent disability' under the Worker's Compensation Act, they need not be identical. Under the Worker's Compensation Act, 'disability' relates to the capacity to work, but as defined in the Occupational Diseases Act its *sine*

*qua non* is the capacity to earn wages. While barely distinguishable, we are not prepared to declare that these standards will never require different results under appropriate facts."

*Id.* at 310.

The evidence adduced at the hearing by the employer and subsequently relied upon by the Board in its findings indicate that Zike was capable of working at some type of employment. Critically, the evidence and the findings do not support a determination that Zike could earn equal wages in other suitable employment which she was capable of performing. As such, the Board used an improper standard in denying Zike's claim under the Occupational Diseases Act.

■ Because on remand the correct law must be applied to the facts, Zike's issue regarding the applicability of the 1991 amendments to the Occupational Diseases Act will also be addressed. In 1991, IND. CODE § 22–3–7–16 was amended to include specific requirements for terminating benefits once begun. As noted above, Zike's disability commenced in 1989. Further, she received disability payments during 1990.

"The long standing rule of statutory construction mandates that a law shall be prospective only in the absence of an express statement that it be retroactive." *Dept. of Env. Mgt. v. Chemical Waste Mgt.* (1992), Ind.App., 604 N.E.2d 1199, 1204. The statutory language does not indicate an intention for the statute to operate retrospectively. Indeed, an employer paying disability benefits and terminating those benefits in 1990 would have no reasonable method of complying with a law which became effective in 1991. Further, because Zike's claim for disability arose prior to the amendment, on remand the amended portion of the statute is inapplicable to Zike's case.

■ Finally, because the issue is raised by Onkyo and may arise on remand, the question whether Zike's condition became permanent and quiescent thereby forming the basis for termination of her temporary total disability benefits will be addressed. Onkyo contends that such a determination is as fully applicable to claims under the Occupational Diseases Act as it is to the Worker's Compensation Act. The authority noted by Onkyo does not stand for that proposition but merely discusses its applicability to a claim under the Worker's Compensation Act.

As suggested by Zike, an occupational disease may not lend itself to a determination of permanence and quiescense. Moreover, the record in the present case indicates that Zike's condition would continue under similar circumstances. Accordingly, such a finding is improper for Zike's claim.

For the above-stated reasons, Zike's claim is remanded for redetermination in accordance with this decision.

Reversed and remanded.

SHARPNACK, C.J., and STATON, J., concur.