**WIMMER TEMPORARIES, INC., and Amcast Industrial Corp., Appellants–Defendants,**

v.

**Martin MASSOFF, Appellee–Plaintiff.**

**No. 93A02–0003–EX–161.**

Court of Appeals of Indiana.

Dec. 14, 2000.

Julia Blackwell Gelinas, Daniel G. Foote, Locke Reynolds LLP, Indianapolis, Indiana, Attorneys for Appellants.

David J. Burton, Burton & Simkin, Richmond, Indiana, Elizabeth G. Russell, Krieg DeVault Alexander & Capehart, LLP, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellants Defendants, Wimmer Temporaries, Inc. (Wimmer) and Amcast Industrial Corp. (Amcast) (hereinafter referred to collectively as "Defendants"), appeal the Award of the Worker's Compensation Board of Indiana (Board), finding in favor of Plaintiff Appellee, Martin David Massoff (Massoff), who was a temporary employee of Amcast supplied by Wimmer.

We affirm.

### ISSUE

Defendants raise the sole issue on appeal of whether the Board erred by concluding that Amcast acquiesced in Massoff's violation of a conspicuously posted safety rule.

### FACTS AND PROCEDURAL HISTORY

Amcast is an aluminum casting foundry that provides cast aluminum parts for the automotive industry using a gravity permanent mold casting process. On January 16, 1997, Massoff, a temporary employee of Wimmer, began working as a caster at Amcast. Wimmer and Amcast stipulated to the fact that Massoff is their joint employee.

On January 29, 1997, Massoff was injured while he was cleaning a part on the casting machine he operated as part of his job. On June 30, 1997, Massoff filed an Application for Adjustment of Claim with the Indiana Worker's Compensation Board for his injury on January 29, 1997.

As a caster, Massoff was responsible for operating an automated rotating table upon which sat eight molds that were automatically filled with molten aluminum as the table rotated or "indexed." The table indexed approximately every 40–50 seconds as molten aluminum was poured into one of the molds from a doser spout. It was Massoff's responsibility to periodically clean the doser spout by removing the excess aluminum from the doser spout. The proper way to clean the doser spout was to first shut down the table, and then enter the area behind the safety cage or safety gate and clean the machine.

Although it was common practice at the foundry to clean the doser spout while the table was in operation, on January 22, 1997, a safety notice was posted that stated that anyone found inside the safety gate or safety cage while the equipment was running would be disciplined.

It is undisputed that at the time of Massoff's injury, the table was in operation. Thereafter, Massoff filed his worker's compensation claim, and on June 23, 1999, the Board held a hearing. On September 8, 1999, a single member of the Board found in favor of Massoff, and concluded that the Defendants acquiesced in Massoff's safety violation. On September 27, 1999, Defendants filed an Application for Review by Full Board, and on October 4, 1999, Massoff filed an Application for Review by Full Board. On January 25, 2000, a hearing was held before the Full Board, and on February 15, 2000, the Full Board affirmed the Single Hearing Member's decision. Additional facts will be supplied when necessary.

## DISCUSSION AND DECISION
### Standard of Review

■ Defendants face a deferential standard of review in their attempt to challenge the Board's findings. Upon appeal from a finding of the Worker's Compensation Board, the Court of Appeals is bound by the Board's findings of fact, and may not disturb its determination unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Rogers v. Bethlehem Steel Corp.*, 655 N.E.2d 73, 75 (Ind.Ct.App.1995). Instead, it is the duty of the Board, as the trier of fact, to make findings that reveal its analysis of the evidence and are specific enough to permit intelligent review of the Board's decision. *K–Mart Corp. v. Morrison*, 609 N.E.2d 17, 27 (Ind.Ct.App.1993), *trans. denied.* In reviewing a decision of the Board, the Court of Appeals reviews the record to determine if there is any competent evidence of probative value to support the Board's findings. We then examine the findings to see if they are sufficient to support the decision. *Id.* We will not reweigh the evidence or assess the credibility of the witnesses. *Id.* We employ a two-tiered standard of review. We will review the evidence in the record to see if there is any competent evidence of probative value to support the Board's findings and then examine the findings to see if they are sufficient to support the decision. *Id.* We will consider only the evidence most favorable to the award, including any and all reasonable inferences deducible from the proven facts. *Neidige v. Cracker Barrel*, 719 N.E.2d 441, 443 (Ind.Ct.App. 1999), *reh'g denied.* Therefore, to prevail upon their appeal, Defendants are required to show that there was no probative evidence from which the Board might reasonably conclude as it did. Because the record contains competent evidence to support the Board's claim, Defendants' appeal must fail.

### Acquiescence

■ Defendants argue that the plain language of the Indiana Worker's Compen-

sation Act bars Massoff's worker's compensation claim because he knowingly failed to obey a conspicuously posted written safety rule. Specifically, Defendants contend that the term "acquiescence" has never been used so broadly as to eviscerate the plain language of Ind.Code § 22–3–2–8, and an employer's acquiescence to its employee's misconduct can only be used to defeat the affirmative defenses under Ind. Code § 22–3–2–8 when the acquiescence undermines one or more of the statutory elements of the defense. Essentially, Defendants claim that because they did not specifically direct Massoff to do that which was prohibited by its own written safety rules and Massoff was aware of the safety rule, they met their burden of proof that Massoff knowingly violated a posted safety rule. Therefore, Defendants argue that they are entitled to advance their affirmative defense to bar Massoff's worker's compensation claim, and the Board's decision denying their affirmative defense for their acquiescence to Massoff's violation of the rule is contrary to law and should be reversed. We disagree.

Ind.Code § 22–3–2–8 contains numerous affirmative defenses to liability available to an employer, barring an employee's worker's compensation claim for the employee's conduct. Specifically, the statute states:

No compensation is allowed for an injury or death due to the employee's knowingly self-inflicted injury, his intoxication, his commission of an offense, his knowing failure to use a safety appliance, *his knowing failure to obey a reasonable written or printed rule of the employer which has been posted in a conspicuous position in the place of work*, or his knowing failure to perform any statutory duty. *The burden of proof is on the defendant*.

Ind.Code § 22–3–2–8 (emphasis supplied).

Defendants assert that because they met their burden of proof that Massoff knowingly disobeyed a conspicuously posted safety rule, their acquiescence as to Massoff's violation is of no matter, and there-

fore, they should be entitled to assert an affirmative defense under Ind.Code § 22–3–2–8. However, the Board found otherwise, specifically concluding that:

1. It is further found that the plaintiff was hired as a temporary employee at Amcast Industrial Corp. approximately two weeks before the date of the accident and was trained to perform a certain procedure described as cleaning the doser spout without shutting the machine down.

2. It is further found that on or about January 22, 1997 a certain safety notice was posted in the glass case outside the break room at the place of employment.

3. It is further found that the plaintiff, Martin David Massoff, was aware of the safety procedure regarding shutting off the machine prior to cleaning the doser spout prior to the time of his accident herein.

4. It is further found that on the date of the occurrence supervisory and training employees observed the plaintiff cleaning the doser spout or performing another procedure without following the posted safety rule but neither the supervisory or training employee immediately counseled the plaintiff with respect to the safety violations as operations manager, Lingo, testified should have occurred.

5. It is further found that the safety procedure required the machine to be shut down and that a consequence of shutting the machine down is that the dies cool off and create more scrap parts.

6. It is further found that after the posting of the safety notice the co-employees who were responsible for training either the plaintiff or the person who was training the plaintiff engaged in the same practices that were prohibited by the safety notice;

to-wit: cleaning the spout with the table running.

7. It is further found that on the evening of the occurrence the scene was described as 'utter chaos' in that there were breakdowns and numerous problems causing parts to come out bad.

8. It is further found that immediately before the accident the plaintiff entered the doser spout area while the machine was still in operation and without following the safety procedure.

9. *It is further found that notwithstanding the fact that the plaintiff did not follow the safety procedure, the defendants' defense, pursuant to I.C. 22–3–2–8, is hereby denied based on the supervisory or training employees' acquiescence in the violation of the safety procedure, both by failing to immediately counsel the plaintiff when they saw a safety procedure being violated and in failing to follow the appropriate safety procedures themselves in performing their duties after the posting of the safety notice. . . .*

(R. 63–64) (emphasis supplied).

First, the Defendants rely on *U.S. Steel Corp. v. Mason,* 141 Ind.App. 336, 227 N.E.2d 694 (1967), *reh'g denied,* for the proposition that acquiescence may prevent the assertion of a safety rule violation affirmative defense when the employer not only allowed the violation to exist and made no move to stop the violation or discipline the violator but also affirmatively directed the employee to continue working in violation of the rule.

In *Mason,* this court held that where a claimant, who the employer knew to be intoxicated while operating a crane, was violating the employer's safety rules, the employer was prevented from asserting a safety rule affirmative defense for the employee's injury that occurred while the employee was intoxicated because the employer failed to take the employee off the job, and made no move to stop the violation of its rules or to discipline the violator. *Id.* Therefore, Defendants contend that because they never directly instructed Massoff to continue working in violation of the safety rule, they did not acquiesce in Massoff's safety rule violation, and therefore, they should be permitted to assert the safety rule violation affirmative defense under Ind.Code § 22–3–2–8.

However, Defendants fail to recognize the following language in *Mason:*

In view of all the circumstances we come to the conclusion that the employer here allowed the violation to exist and made no move to stop the violation or discipline the violator.

If the employer allows violations of the rule or acquiesces therein, he cannot later set up such a violation as a defense to the payment of compensation.

We believe that the employer has an obligation to check all infractions of its rules particularly as they relate to drinking and intoxication. At least, where an employee is drinking on the job and the supervisory personnel are aware of it, it would be only common sense to get such a man off the job and out of danger to himself and others. We do not say that with thousands of workers, the employer should make a check of each worker to ascertain their sobriety, but here is a case where the condition was plain for all to see and nothing was done by the employer to correct the condition.

By no means do we excuse drinking or intoxication on the part of employees on any job, nor do we mean to contravene the statute that bars recovery by employees who are intoxicated. What we are saying is that when a violation is as evident and plain as in this case, the employer must take some step to eliminate any semblance of approval or acquiescence.

*Mason,* 227 N.E.2d at 696 (citations omitted).

Therefore, the Defendants' reliance on *Mason* is misplaced. We did not hold that the employer was prevented from asserting an affirmative defense for its direct instruction for the employee to continue working in violation of a safety rule, but instead, we held that the safety rule violation affirmative defense was properly denied because the employer failed to take some step to stop the violation and eliminate any semblance of approval or acquiescence.

Next, Defendants rely on *Motor Freight Corp. v. Jarvis,* 163 Ind.App. 442, 324 N.E.2d 500 (1975), for the proposition that an employer cannot establish a safety rule defense when a prohibited act is expressly permitted by the employer and injury results.

In *Jarvis,* we held that where an employee truck driver was not aware that he was committing a misdemeanor in violation of federal regulations requiring rest after ten hours of duty, and the forbidden trip was authorized and acquiesced to by the employer's agent, the employee's award for temporary total disability was not barred by commission of the misdemeanor or on a theory that the employee willfully failed or refused to obey an employer rule or perform a statutory duty. *Id.* Therefore, Defendants argue that because they never gave Massoff express permission to violate a safety procedure, their affirmative defense was improperly denied.

However, in *Jarvis* we also held that:

It should be noted in such cases that even though a workman has committed a misdemeanor through violation of some statute, his guilt will not defeat a claim for compensation where it is condoned by the employer. Where an employer knows that an employee has been violating safety statutes, and has acquiesced in it, he cannot be heard to set up such a violation as a defense to a claim for injury or death growing out of the breach.

*Id.* at 505. Thus, the Defendants' reliance on *Jarvis* is misplaced. We did not sustain the Full Industrial Board's finding and award in favor of the employee because the employer expressly permitted the employee to violate a safety procedure. Rather, we held that because the employer knew that its employee was violating a safety statute, and acquiesced to the employee's conduct, the employer cannot assert the employee's violation as an affirmative defense to the employee's claim.

Finally, Defendants rely on *Kuhner Packing Co. v. Hitchins,* 97 Ind.App. 228, 186 N.E. 262 (1933), for the proposition that an employer's acquiescence may prevent the establishment of a safety rule violation defense when the employee is unaware of the rule he is charged with violating. Specifically, Defendants claim that because Massoff had clear knowledge of the safety rule he was violating, they met their burden of proof that Massoff had knowledge of the safety rule he was violating, and therefore, it was improper to prevent them from asserting their affirmative defense under Ind.Code § 22–3–2–8.

In *Kuhner,* the employee was injured while riding on an elevator used to convey materials to upper parts of a building that was under construction. *Id.* at 263. This conduct was a felony according to the building rules of the Administrative Building Council of Indiana. *Id.* Although this was a written prohibition at the work place, it was common practice for employees to use the elevator as a means of conveyance from one floor to another, and at the time of the accident, the employer's vice president was riding the elevator when the elevator fell and injured the employee. *Id.* However, the employee had no knowledge of the rule, and no notice of any kind had been posted anywhere on or about the premises where the employee was working. *Id.* When the employee filed his compensation claim, the employer asserted the defense that no compensation should be allowed because the injuries sus-

tained by the employee were due to his commission of a felony, and his willful failure to perform a statutory duty. *Id.* The Industrial Board found in favor of the employee and this court affirmed the Board's finding and held that:

> As we view the rule in connection with the statute authorizing its enactment, its purpose and effect is to require of persons in charge of construction work that their employees be notified that they are forbidden to do that which the rule seeks to prevent . . .

> It would be manifestly unjust to hold that an employer might ignore a rule adopted as this one was, and then invoke it in order to defeat an award of compensation to his servant, who was injured while in the discharge of the duties of his employment in the way and manner allowed, permitted, and authorized by the employer. This is particularly true when, as in the instant case, the servant has no knowledge of the existence of the rule violated.

*Kuhner,* 186 N.E. at 264.

■ Therefore, the Defendants' reliance on *Kuhner* is misplaced. The language of *Kuhner* stands for the proposition that, even had the employee knew of his violation, the fact that the employer's vice president not only allowed the prohibited conduct, but also himself engaged in the prohibited conduct prevented the employer from asserting the defense of the employee's rule violation. Thus, an employer cannot shield itself from liability behind a safety rule that it fails to enforce, and instead displays its acquiescence.

In the present case, it is undisputed that prior to the posting of the safety notice, it was considered a safety violation and against company policy to "ride the table" or to be in an area behind the safety gate or in a cage with the machine in operation. However, several Amcast employees, including, Dave Clevenger (Clevenger), another die caster who trained Massoff, Buddy Baney (Baney), a die conditioner, and Orville Gamber (Gamber), a team leader, all testified that it was the typical practice at the plant to violate known safety rules and clean the doser spout while the table was still in operation. Clevenger and Baney testified that the reason for cleaning the doser spout with the machine in operation was because management put pressure on employees to clean the doser spout with the table in operation and turning off the table would slow down production, resulting in more scrap parts. Moreover, Massoff, Clevenger, and Baney testified that Clevenger, who was well aware of the safety violation, trained Massoff to clean the doser spouts with the table in operation. Amcast's Operations Manager Allen Lingo (Lingo) testified that on January 22, 1997, he posted a safety notice that he had written in the main aisle-way leading to the break area under glass. Lingo further testified that in the notice he stated that in the week prior to the posting of the safety notice, he had observed two employees inside the gate or cage when the machine was in operation. However, Baney and Gamber testified that after the safety notice was posted they witnessed employees cleaning the doser spouts with the table in operation. Furthermore, Massoff testified that at the time of the accident he had not seen the posted safety notice, but he was aware that "riding the table" was a safety violation. Clevenger and Gamber also testified that approximately six hours before Massoff's accident, they observed Massoff violating the safety rule by cleaning the doser spout while the table was in operation. However, neither Clevenger nor Gamber disciplined or counseled Massoff about his violative conduct. Nevertheless, Lingo testified that Clevenger and Gamber both had the authority to and should have approached Massoff and counseled him about discontinuing his violation of the safety rule.

Therefore, in reviewing the decision of the Board, we find that the Record reveals competent evidence of probative value to support the Board's finding that the Defendants acquiesced in Massoff's violation

of the safety procedure, and therefore, Defendants' affirmative defense under Ind. Code § 22–3–2–8 is denied. Because the Record sufficiently supports a finding that Amcast supervisory or training personnel failed to immediately counsel Massoff after witnessing him violate a safety procedure and failed to properly follow the safety procedures themselves in performing their duties all after the safety notice had been posted, we must affirm the Board's decision.

Affirmed.

VAIDIK, J., and BAILEY, J., concur.