**GRAYCOR INDUSTRIAL, Appellant,**

v.

**Anthony METZ, Appellee.**

**No. 93A02–0308–EX–721.**

Court of Appeals of Indiana.

April 14, 2004.

Rehearing Denied June 21, 2004.

---

James E. O'Gallagher, Amy N. Kendt, Kopka, Pinkus & Dolin, Crown Point, IN, Attorneys for Appellant.

Patrick A. Schuster, Crown Point, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Graycor Industrial (Graycor) appeals from the determination of the Worker's Compensation Board (the Board) affirming an award of benefits to Anthony Metz.

We affirm.[1]

### GRAYCOR'S ISSUES

1. Whether the Board erred by failing to rule upon Graycor's motion for leave to submit additional evidence and if so, whether consideration of the additional evidence would have required a determination that Metz's

---

1. We did not consider Graycor's late-filed Re-ply Brief in our determination on appeal.

injuries did not arise out of and in the course of his employment.

2. Whether the evidence submitted at the hearing before the Single Member, without consideration of the additional evidence, supports the Board's determination that Metz's injuries arose out of and in the course of his employment.

### METZ'S ISSUE

3. Whether Graycor's appeal is frivolous, vexatious, in bad faith, and undertaken for purpose of delay and harassment such that Metz is entitled to appellate attorney's fees and a 10% increase in his award?

### FACTS

Metz was employed as a carpenter by Graycor. On Wednesday, August 23, 2000, Metz arrived at a Graycor jobsite in Portage, Indiana at approximately 6:00 a.m. He was assigned that morning to build ladders as a means of ingress and egress for other workers in trenches. That day, Metz informed his supervisor that he had personal business that would require him to leave the jobsite. At approximately 8:45, as Metz was walking out of a trench in soft sand, he twisted his ankle, "went down on one knee, got back up, went up the other side of the trench, and proceeded on [his] way to the gang trailer to put [his] tools away." (Tr. 19). As Metz was leaving he saw a supervisor who was "kind of a distance away." (Tr. 20). Metz "yelled out to him, 'I slipped and fell.'" (Tr. 20). The supervisor "shrugged his shoulders," but Metz was not certain that the supervisor had heard him. (Tr. 20–21). Metz thought his ankle was sprained. After placing his tools in the trailer, he left the jobsite.

After Metz returned to his home and removed his boot, he learned that his ankle was quite swollen. He called for a medical appointment and was told that he could not be seen until August 25, 2000.

On August 24, 2000, Metz returned to work. Because his ankle was sore and a little swollen, he laced his boot tightly. After the safety meeting that morning, Metz told his immediate supervisor, Rich Smulski, that he had a medical appointment on Friday relating to the incident at the jobsite on August 23, 2000. At that point, Metz told Chris Collier, the job superintendent, that he had hurt his ankle the day before and that he needed to leave the jobsite early on Friday for the medical appointment relating to the injury. Collier "blew up, and told" Metz "to get off the job site." (Tr. 24). Collier took Metz to a trailer to obtain his pay. After Metz waited approximately an hour for his pay, Collier escorted Metz from the jobsite. On August 25, 2000, Metz was treated by a private physician, Dr. Fedorchak.

On December 18, 2000, Metz filed a second application for adjustment of his worker's compensation claim. At the time of the hearing before the Single Hearing Member on April 25, 2002, Metz testified to the above events. Graycor presented the written statements of the supervisors indicating that Metz had not told them of the injury until August 24, 2000, the day after the injury. Metz testified that he was not aware of the reporting procedures when one sustained an on-the-job injury, or that after such an injury he was to be "treated by a work doctor." (Tr. 33). Also, he was not told by his employer when or where to report for a drug test even though he was aware of such a policy when one sustained a work-related injury.

At the time of the hearing, Metz was continuing treatment with Dr. Fedorchak. At the hearing, Metz described the treat-

ment and the efforts to halt the deterioration of his ankle bone:

[T]hey've got a bone stimulator on me. They're trying to get the bone to heal back together. I can't—I've tried everything that I can do. I've tried heavy lifting, I've tried (inaudible). Everything I can do to try to work with this leg, and it's just, I can't do it.

\* \* \* \* \*

The bone's not healing. It's actually deteriorating.

(Tr. 26).

In October 2000, Dr. Fedorchak had performed surgery on Metz's ankle. Metz continued to have pain and difficulties with the ankle. Dr. Fedorchak's notes after a May 2001, CT examination stated:

Bone sclerosis in the talus due to post traumatic arthritic changes and bone healing around a comminuted fracture. There is a small residual nonunited fracture seen laterally and posteriorly in the inferior articular surface of the talus.

(Exhibits 20).

By the time of the hearing, Metz had had extensive treatment, including physical therapy, a TENS unit, a brace, and a bone stimulator. He had incurred $26,000 in medical bills. Metz was not working and was not able to return to his former employment as a carpenter.

He noted that he had difficulty lifting heavy objects because his ankle felt "very uncomfortable" when he did so. (Tr. 52). However, he stated that he had "tried to do things around the house that [he did] normally." (Tr. 53). Also, in his March 2002 deposition, he explained that he regularly helped around the house because he could not expect his fiancée to perform all household chores. In the deposition, he went into great detail regarding the financial hardship of not working for an extended period thereby requiring him to apply for food stamps and disability benefits, as well as borrow money from others.

At the hearing, Graycor disputed that the injury occurred at work. In the alternative, Graycor took the position that even if the injury occurred at work, Metz failed to properly report the injury thereby avoiding the company-authorized treatment and the drug testing policy.

On July 31, 2002, the Single Member Hearing Judge entered findings of fact and conclusions of law awarding Metz temporary total disability. In pertinent part, the order states:

1. That on August 23, 2000, Plaintiff was an employee of Defendant.

2. That on August 23, 2000, Plaintiff suffered an injury to his left ankle while on the work site of Defendant, Graycor, in Portage, Indiana.

3. That on August 23, 2000, Plaintiff's average weekly wage exceeded the maximum allowance under the Indiana Worker's Compensation Act.

4. That, per Plaintiff, Defendant was orally notified of Plaintiff's ankle injury on August 24, 2000, when Plaintiff told his job superintendent, Chris Collier.

5. That per Chris Collier . . ., Plaintiff reported his injury sometime after being laid off from his Graycor job and prior to August 28, 2000, the date of Collier's statement.

6. That Plaintiff was laid off from Graycor on August 24, 2000.

7. That on August 23, 2000, Plaintiff sustained a plantar flexion, inversion left ankle injury with rupture of the anterior talofibular ligament, and multiple fractures of the talus bone.

8. That the injuries sustained by Plaintiff to his left ankle on August 23, 2000, are consistent with Plaintiff's de-

scription of the manner in which he injured the ankle.

9. That Plaintiff underwent surgery on October 12, 2000, for repair of the damaged anterior talofibular ligament and resection of the fractured os trigonum.

10. That Plaintiff has undergone several types of treatment for his ankle injury and has incurred medical bills arising from his August 23, 2000 injury in excess of $26,000.00, none of which have been paid by Defendant.

11. That Defendant has not paid any worker's compensation disability benefits to Plaintiff.

12. That Plaintiff has been totally disabled since August 23, 2000, and continues to be totally disabled at this time as a result of the August 23, 2000 injury to his ankle.

13. That Plaintiff's condition is not quiescent and additional treatment for his injury is needed.

14. That Plaintiff suffered an injury to his left ankle on August 23, 2000, that arose out of and in the course of his employment with Defendant.

15. That Plaintiff has been totally disabled since August 23, 2000, as a result of his covered injury.

\* \* \* \* \*

17. That Plaintiff has not received any TTD compensation from Defendant and is entitled to TTD benefits from August 23, 2000, at the rate of $508.00 per week, with retroactive benefits payable in a lump sum.

18. That Defendant is obligated to pay the Plaintiff's medical expenses incurred and to be incurred as a result of his covered injury, all in accordance with the Act. The bills submitted at the hearing of this matter, together with any bills for treatment rendered to Plaintiff from any of those same providers since August 23, 2000, are payable by Defendant, as well as future statutory medical.

19. That Defendant had actual knowledge of the Plaintiff's injury under the Act and was not prejudiced by the notice given by the Plaintiff.

20. That Defendant had timely notice of the Plaintiff's injury under the Act and was not prejudiced by the notice given by the Plaintiff.

### AWARD

IT IS THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Worker's Compensation Board of Indiana that there be awarded Plaintiff as against Defendant as follows:

1. That Plaintiff's medical condition arising from his covered injury is not quiescent.

2. That Plaintiff has not received any TTD compensation from Defendant and is entitled to TTD benefits from August 23, 2000, at the rate of $508.00 per week, with retroactive benefits payable in a lump sum.

3. That Defendant is obligated to pay the Plaintiff's medical expenses incurred and to be incurred as a result of his covered injury, all in accordance with the Act. The bills submitted at the hearing of this matter, together with any bills for treatment rendered to Plaintiff from any of those same providers since August 23, 2000, are payable by Defendant, as well as future statutory medical.

4. That Defendant had actual knowledge of the Plaintiff's injury within thirty (30) days of the injury.

5. That Defendant had timely notice of the Plaintiff's injury under the Act

and was not prejudiced by the notice given by the Plaintiff.

(App.3–6).

On August 30, 2002, Graycor filed its application for review of the Single Member's decision by the Full Board. Approximately eight months later, in April 2003, Graycor filed its "Motion for Leave to Submit Additional Evidence Pursuant to 631 IAC 1–1–15," based upon surveillance of Metz on September 16, 2002 and September 23, 2002. (Exhibits 246–51). According to Graycor's motion, the surveillance showed Metz walking without an antalgic gait and performing hauling services, including "loading a refrigerator onto a pick-up truck on September 16, 2002 . . . ." (Exhibits 249).

Despite the surveillance performed in September 2002, Graycor sent Metz to Brian Coleman, M.D. for an independent medical examination in October 2002. After Dr. Coleman's examination of Metz, on October 3, 2002, he recommended a fusion of Metz's ankle and opined that he could not return to his former employment as a carpenter. Subsequently, Graycor sent the surveillance information to Dr. Coleman. In a November 18, 2002 report, Dr. Coleman stated that he reviewed the surveillance tape and observed that Metz lifted heavy objects and appeared to have full range of motion. Dr. Coleman then opined: "it is my professional opinion that the patient can perform his former job as a carpenter, based on the activity of this tape . . . . (Exhibits 260).

On June 24, 2003, the Full Worker's Compensation Board entered its order stating:

The Full Worker's Compensation Board, having heard arguments of counsel and being duly advised in the premises, now finds the Single Hearing Member entered his Award dated July 31, 2002, which said Award was in the following words and figures, to-wit:

It is further found by the majority of the members of the Full Worker's Compensation Board that the Single Hearing Member's decision should be sustained. (App.1–2). The Full Board's award affirmed the Single Hearing Member's decision granting Metz worker's compensation benefits.

Additional evidence is supplied below as necessary to our review.

### DECISION

█ An appellant faces a deferential standard of review when challenging the Board's findings. *Wimmer Temporaries, Inc. v. Massoff,* 740 N.E.2d 886, 888 (Ind. Ct.App.2000), trans. denied. When reviewing an appeal from a decision of the Worker's Compensation Board, this court is bound by the Board's findings of fact and may consider only errors in the Board's conclusions of law. *Indiana Michigan Power Company v. Roush,* 706 N.E.2d 1110, 1113 (Ind.Ct.App.1999), trans. denied. "However, we may disturb the Board's factual determinations if we determine that the evidence is undisputed and leads inescapably to a result contrary to the one reached by the Board." *Id.*

█ We employ a two-tiered standard of review: 1) we examine the evidence in the record for competent evidence of probative value to support the Board's findings, and 2) we examine the findings to determine their sufficiency to support the decision. *Wimmer,* 740 N.E.2d at 888. The Board has an obligation to enter specific findings of fact that support its ultimate conclusions of law. *Indiana Michigan Power Company,* 706 N.E.2d at 1113 (citing *Perez v. United States Steel Corp.,* 426 N.E.2d 29, 32 (Ind.1981)). The findings must be stated with sufficient specificity, with regard to contested issues, so as

to allow intelligent review. *Id.* In conducting the review, this court will neither weigh evidence nor assess the credibility of witnesses and will consider only the evidence most favorable to the award, together with all reasonable inferences. *Zike v. Onkyo Mfg., Inc.,* 622 N.E.2d 1055, 1057 (Ind.Ct.App.1993). Therefore, to prevail, Graycor must demonstrate that there was no probative evidence from which the Board might reasonably conclude as it did. *See Wimmer,* 740 N.E.2d at 888.

### 1. *Additional Evidence*

■ Graycor contends that the Full Board erred by failing to rule on its motion to submit additional evidence as allowed by 631 Ind. Admin. Code 1–1–15. In pertinent part, the section provides:

> The facts upon review by the full board will be determined upon the evidence introduced in the original hearing, without hearing new or additional evidence at the discretion of the ... board. Any party desiring to introduce new or additional evidence shall file an affidavit setting forth therein the names and residences of the witnesses to be called to testify before the full board, the facts to which they will testify, or, if the new evidence be documentary, then a copy of the document proposed to be introduced setting forth good reason for failure to introduce such evidence at the original hearing. If such petition is granted, the opposing party shall have the right to introduce such additional evidence as may be necessary in rebuttal.

631 IAC 1–1–15.

■ "When the Board is reviewing a single hearing member's determination, the decision to deny or allow the introduction of additional evidence is a matter within the Board's sound discretion." *Hancock v. Indiana School for the Blind,* 651 N.E.2d 342, 343 (Ind.Ct.App.1995),

trans. denied. On review, we do not disturb such rulings unless there is a clear abuse of discretion. *Id.*

Here, the decision of the Board did not specify whether the additional evidence was considered. Graycor urges that the matter be remanded for a determination on admissibility: Metz contends that the Board's failure to rule on the motion to submit additional evidence was harmless error.

In *Kaiser Alum. Chem. Corp. v. Schalton,* 136 Ind.App. 636, 204 N.E.2d 225, 228 (1965), we determined that the Board erred by failing to rule on the admissibility of an exhibit; however, we concluded that because the evidence "would not have changed the result[,] ... the action of the board even though erroneous was harmless." Graycor contends that the "additional evidence leads undeniably to a conclusion that the Employee's claim should not be compensable...." (Appellant's Br. 20). We disagree for two reasons.

First, the claim and the hearing were for a determination of temporary total disability during the period when Metz's injuries were not quiescent. The very nature of such a claim indicates that the claimant's condition is evolving. *Cf. Cavazos v. Midwest Gen. Metals Corp.,* 783 N.E.2d 1233, 1239 (Ind.Ct.App.2003) (injured worker without the ability to return to work of same kind or character during treatment period may seek temporary total disability worker's compensation benefits; once injury has become quiescent, temporary disability ceases and extent of permanent impairment is determined). Thus, the different stages of the proceedings recognize that one might be able to perform or function in a different manner as time goes on. It does not follow that one was never injured or was not injured to the extent the evidence discloses when the function changes after a period of

treatment. The surveillance evidence conducted in September 2002 did not purport to demonstrate Metz's condition as it existed during the time period from the date of his injury on August 23, 2000 to the hearing date on April 25, 2002.

Second, Graycor mischaracterizes Metz's testimony. Metz did not contend that he was completely unable to lift heavy objects or walk absent an antalgic gait. Rather, Metz testified at his deposition and at the hearing in a manner that could be considered consistent with the surveillance evidence. As noted in FACTS, Metz testified that one therapy for his ankle included bearing weight on the joint. He stated that he, in fact, performed household chores such as carrying 25–pound buckets of water to his dogs. He stated that he experienced pain when he performed some activities, including some that were part of his weight-bearing therapy. He also testified that he was desperate for financial assistance because of the medical bills and his inability to work at his former salary as a carpenter. The surveillance evidence, several months after his testimony, that showed him apparently performing some work to supplement his income is not inconsistent with his testimony.

In any event, the supplemental surveillance evidence may be relevant to the permanent impairment rating that was not part of the proceedings before us. The surveillance evidence does not dictate a result different than that reached by the single member or the Board at this juncture. The failure to rule on the admissibility of the evidence was harmless.

Also, Metz contends that Graycor failed to set forth good reason for failing to investigate and present any impeachment evidence prior to the hearing before the single member. Graycor's facile and circular reasoning for the late evidence is that the surveillance was conducted after the hearing. Graycor misses the point. Graycor wholly failed to explain its late effort to investigate the case and order surveillance of Metz after the hearing.

Also, as noted in FACTS, the surveillance was conducted prior to the independent medical examination by Graycor's expert, Dr. Coleman. After the surveillance had been conducted by Graycor in September 2002, Dr. Coleman rendered his opinion on October 17, 2002 that Metz required further surgery for ankle fusion and that Metz could not return to his prior employment. Subsequently, Graycor provided Dr. Coleman with the surveillance evidence, prompting Dr. Coleman to alter his medical opinion. Here, Graycor has failed to meet its burden for submitting additional evidence.

Therefore, as noted above, the Board's failure to rule on the admissibility of the surveillance evidence was harmless. Further, the surveillance evidence does not dictate a result different than that reached by the single member of the Full Board.

2. *Sufficiency of the Evidence*

    ▉ Graycor also contends that even without considering the additional surveillance evidence, the Single Hearing Member was not presented with sufficient evidence to support the findings and the worker's compensation award. Specifically, Graycor urges that Dr. Fedorchak's notes indicate that while Metz was under the effects of anesthetic he admitted to social drug use, that Metz did not undergo a drug test at the time of the accident as required by Graycor policy, that Metz did not seek treatment from an approved physician, and that Metz did not properly report the accident.

Graycor candidly urges that all of these contentions bear upon Metz's credibility. As noted above, we do not reweigh evi-

dence or judge credibility on review of worker's compensation claims. *See Wimmer*, 740 N.E.2d at 888. Here, as set out in FACTS, the Single Hearing Member made extensive findings of fact to support the award.

Indiana Code § 22–3–2–8 provides:

No compensation is allowed for an injury or death due to the employee's knowingly self-inflicted injury, his intoxication, his commission of an offense, his knowing failure to use a safety appliance, his knowing failure to obey a reasonable written or printed rule of the employer which has been posted in a conspicuous position in the place of work, or his knowing failure to perform any statutory duty. The burden of proof is on the defendant.

Graycor did not at the hearing, or here on appeal, contend that it posted the rules regarding reporting injuries, seeking treatment from an approved physician, or drug testing after an on-the-job accident. *Cf. Wimmer*, 740 N.E.2d at 888–89 (to rely upon a claimant's failure to comply with rules, defendant has the burden to demonstrate that rules were conspicuously posted).

Metz testified that he did not know of the policies regarding reporting on-the-job injuries or seeking treatment from an approved physician. The evidence supports the findings with regard to Metz reporting the injury. As noted in the findings, Graycor had actual knowledge of the injury either August 23 or August 24. Indiana Code § 22–3–3–1 provides:

Unless the employer or his representative shall have actual knowledge of the occurrence of an injury or death at the time thereof or shall acquire such knowledge afterward, the injured employee or his dependents, as soon as practicable after the injury or death resulting therefrom, shall give written notice to the employer of such injury or death.

Unless such notice is given or knowledge acquired within thirty (30) days from the date of the injury or death, no compensation shall be paid until and from the date such notice is given or knowledge obtained. No lack of knowledge by the employer or his representative, and no want, failure, defect or inaccuracy of the notice shall bar compensation, unless the employer shall show that he is prejudiced by such lack of knowledge or by such want, failure, defect or inaccuracy of the notice, and then only to the extent of such prejudices.

The evidence supports the finding that Graycor had actual knowledge of the injury, and it did not order Metz to report to an approved physician or to take a drug test; therefore, Graycor was not prejudiced by Metz's method of reporting the injury.

As to the social drug use, the physician's note referencing Metz's admission while under the influence of anesthesia did not contain any information regarding a timeframe for such use. There is no indication that Metz had been using social drugs near the time of his accident. Rather, Graycor speculates that Metz did not actually report the incident to a supervisor as he was leaving the jobsite on the day of his injury and that the failure of notice was in an effort to avoid the drug testing policy. That argument was presented at the hearing and rejected by the Single Hearing Member and the Board. Further, courts on review do not engage in speculation. *See State ex rel. Goldsmith v. Superior Court of Marion County* 463 N.E.2d 273 (Ind.1984).

Here, the record is replete with evidence to support the extensive findings conclud-

ing that Metz was entitled to an award of temporary total disability.

### 3. *Appellate Attorney's Fees and Increased Award*

Metz contends that Graycor's appeal was in bad faith and undertaken for the purpose of harassment and delay. Metz asserts that he is entitled to appellate attorney's fees pursuant to Indiana Appellate Rule 66(E), and an increased award pursuant to Indiana Code § 22–3–4–8(f).

■ Appellate Rule 66(e) states:

The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution.

Our discretion to award attorney's fees under the rule is limited to instances when the appeal is "permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Boczar v. Meridian Street Foundation,* 749 N.E.2d 87, 95 (Ind.Ct.App.2001) (quoting *Orr v. Turco Mfg. Co.,* 512 N.E.2d 151, 152 (Ind. 1987)); *see also Thacker v. Wentzel,* 797 N.E.2d 342, 346 (Ind.Ct.App.2003). Requests for awards of appellate attorney's fees have been categorized as "procedural," for flagrant violations of appellate procedure, and "substantive," for appellate arguments that are utterly devoid of all plausibility. *Boczar,* 749 N.E.2d at 95. Metz contends that he is entitled to attorney's fees on both grounds.

■ As to the substantive allegations, Metz urges that by undertaking an appeal based upon the sufficiency of the evidence Graycor demonstrated purpose of delay and bad faith. Metz dismisses the other components of Graycor's arguments as well. Although a party questioning the sufficiency of the evidence has a substan-

tial burden, such appeals are not *ipso facto* meritless. Also, Graycor presented a legitimate, albeit unsuccessful, complaint with regard to the Board's failure to rule on its motion to submit additional evidence. Accordingly, Metz could not prevail as to an award of attorney's fees on a substantive bad faith allegation.

■ However, Metz's contention with regard to procedural bad faith is not as easily dismissed. Graycor's brief did not appropriately conform to the appellate rules. Graycor did not set out the facts in accordance with the standard of review. Graycor set out facts incorrectly. Additionally, in part, Graycor's arguments were based upon less than a full consideration of the evidence presented at the hearing. Taken in toto however, Graycor's brief does not appear to be "written in manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court." *Boczar,* 749 N.E.2d at 95. As such, an award of appellate attorney's fees is not appropriate here.

■ Metz also requests an increase of 10% in his worker's compensation award based upon statute. Indiana Code § 22–3–4–8(f) provides:

An award of the full Board affirmed on appeal, by the employer, shall be increased thereby five percent (5%), and by order of the court may be increased ten percent (10%).

Based upon the allegations of meritlessness and bad faith, Metz urges that his award should be increased by more than the required 5%. Generally, this court has determined that in the absence of substantive or procedural bad faith a claimant's award should be increased by the required 5%. *See e.g., Tanglewood Trace v. Long,* 715 N.E.2d 410, 416 (Ind.Ct.App. 1999), trans. denied. However, considering the extended period that Metz has

been prevented from obtaining worker's compensation benefits, and Graycor's patent disingenuity with regard to some of its arguments, it is appropriate to increase Metz's award by 10% in this case.

The cause is affirmed and the award is hereby increased by 10%.

RILEY, J., and BAILEY, J., concur.