TANGLEWOOD TRACE d/b/a Health
Quest Corp., Appellant–
Defendant,

v.

Sonia K. LONG, Appellee–Plaintiff.

No. 93A02–9811–EX–918.

Court of Appeals of Indiana.

June 30, 1999.

Rehearing Denied Aug. 19, 1999.

**412**

Van A. Nation, Stewart & Irwin, Indianapolis, Indiana, Attorney for Appellant.

Joseph V. Simeri, Butler and Simeri, PC, South Bend, Indiana, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge

Tanglewood Trace (Tanglewood), doing business as Health Quest Corporation, appeals from a decision of the full Worker's Compensation Board (the Board) affirming the single hearing judge's decision that Sonia K. Long suffered accidental injuries arising out of and in the course of her employment on June 3 and 6, 1993 and that she shall be awarded fifty-eight weeks of compensation at a rate of $360 per week for temporary total disability for the period of June 8, 1993 to August 23, 1994, and twenty degrees of permanent partial impairment, at the rate of $500 per degree.

The following restated issues are presented in this appeal:

1. Did the Board err in affirming the hearing judge's determination that Long's injuries arose out of her employment with Tanglewood?

2. Did the Board err in affirming the hearing judge's determination that Long is entitled to an award of fifty-eight weeks of temporary total disability?

3. Did the Board err in affirming the hearing judge's determination that Long is entitled to an award for 20% permanent partial impairment?

4. Is Long entitled, pursuant to Ind.Code Ann. § 22–3–4–8(f) (West 1991), to a 10% increase in her award?

We affirm, order the award increased by 5%, and remand.

■ In reviewing findings and conclusions of the Worker's Compensation Board, this court considers only that evidence which tends to support the Board's determination, together with any uncontradicted adverse evidence. *Grand Lodge Free & Accepted Masons v. Jones*, 590 N.E.2d 653 (Ind.Ct.App. 1992). We will not disturb the decision of the Board except when the evidence leads unalterably to a conclusion contrary to that reached by the Board. *Id.*

A decision is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn therefrom lead to but one conclusion and the Board has reached a different one. In making such a determination we will neither weigh the evidence nor judge the credibility of witnesses. When a conflict in the evidence arises we will consider only the evidence tending to support the Board's award and which is most favorable to the appellee. Given substantial evidence supporting its determination, the Board's ultimate factual conclusion must be upheld although this Court might have reached another had it been the trier of fact.

*Id.* at 654 (citations omitted).

1.

■ Tanglewood first claims that the Board's award to Long is contrary to law

because the June 3 and 6, 1993 incidents did not arise out of Long's employment with Tanglewood.

■■■■ The Indiana Worker's Compensation Act provides compensation to employees who suffer injuries which arise out of and in the course of their employment. *Construction Management and Design, Inc. v. Vanderweele*, 660 N.E.2d 1046 (Ind.Ct.App.1996), *trans. denied.* To be eligible for compensation under the Act, a person must prove both that the injury occurred "in the course of employment" and that the injury "arose out of the employment." *Id.* at 1049. The phrase "in the course of employment" refers to the time, place, and circumstances of the accident. An accident occurs "in the course of employment" when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto. *Id.* The phrase "arose out of the employment" refers to the origin and cause of the injury. *Id.* at 1051. In order for an accident to arise out of employment, there must be a causal relationship between the employment and the injury. *Id.* The causal connection between the work and the accident must generally be such that a reasonably prudent person would comprehend the injury as incidental to the work undertaken. *Id.*

Long, formerly the director of Tanglewood, an assisted residential living facility, testified that, on June 3, 1993, she injured her back when she twisted her body in an effort to answer the telephone while sitting at her desk at work. Long also testified that she sustained additional injury to her back on June 6, 1993, when she was pulled down while she and a nurse's aide were assisting a Tanglewood resident. This evidence was sufficient to establish the requisite causal relationship between Long's work and the injuries she sustained. The Board did not err in affirming the hearing judge's determination that Long's injuries arose out of her employment with Tanglewood.

**2.**

■■ Tanglewood next claims that the award for temporary total disability was based solely on Long's testimony and was not supported by medical evidence and that it is therefore contrary to law or not supported by sufficient evidence.

■■ An injured worker who, during a period of treatment, does not have the ability to return to work of the same kind or character is temporarily totally disabled and may be entitled to worker's compensation benefits. *Ballard v. Book Heating & Cooling, Inc.*, 696 N.E.2d 55 (Ind.Ct.App.1998), *trans. denied.*

The following exchange occurred during Long's direct examination before the single hearing judge:

Q. Now, I'm going to give you a definition of disability and based upon my definition I want you to tell me whether or not you were disabled and for how long a period of time, okay?

A. Yes.

Q. If I define disability as an inability to work at your job that you had at Tanglewood Trace or at a similar job that you were doing at the time you were injured, how long would you say you were temporarily totally disabled?

A. Until August, late August, after I went to Mayo.

Q. Late August of what year?

A. '94.

Q. You went to Mayo, I believe, in August of '94, correct?

A. Yes.

*Record* at 115.

The parties have not provided this court with citation to Indiana case law or statute which addresses the issue whether medical evidence is required to establish a claimant's inability to return to work of the same kind or character in order to be entitled to an initial award of temporary total disability benefits, and our research has revealed none.[1] Nonetheless, other jurisdictions that

1. Tanglewood argues that Ind.Code Ann. § 22–3–3–7(c) and (d) (West Supp.1998) and IC § 22–3– 3–6(e) "clearly establish the necessity of medical evidence to support a claim for temporary total

have considered the issue have concluded that lay evidence is sufficient proof of the inability to return to work. *See Chamber Door Indus., Inc. v. Graham,* 59 Ark.App. 224, 956 S.W.2d 196 (1997) (court refused to hold that a claimant must offer objective medical evidence of the existence of an injury or that the healing period continues); *Lymburn v. Symbios Logic,* 952 P.2d 831 (Colo. Ct.App.1997), *cert. denied* (nothing in the state Worker's Compensation Act imposes a requirement for a physician's opinion with respect to a claimant's initial entitlement to receive temporary total disability benefits). *See also City of Olive Hill v. Parsons,* 306 Ky. 83, 206 S.W.2d 41 (1947) (claimant's own testimony deemed sufficient to support a finding of permanent disability even in the absence of medical evidence).

In 7 Arthur Larson & Lex K. Larson, *The Law of Worker's Compensation* § 79, at 15–426.32(66), it is said:

> In line with the general tendency of administrative law to recognize the expertise of specialized tribunals, compensation boards may rely to a considerable extent on their own knowledge and experience in uncomplicated medical matters, and in such cases awards may be upheld without medical testimony or even in defiance of the only medical testimony.

In addition, Larson instructs:

> In arriving at the rule permitting awards in the absence or even in contradiction of medical testimony, two underlying reasons may be discerned: The first is

that lay testimony, including that of the claimant, is of probative value in establishing such simple matters as the existence and location of pain, and sequence of events leading to the compensable condition, and the actual ability or inability of claimant to perform work; the second is that Industrial Commissions generally become expert in analyzing certain uncomplicated kinds of medical facts, particularly those bearing on industrial causation, disability, malingering, conversion reaction, and the like.

*Id.,* § 79.53, at 15–426.162, 15–426.167 (footnotes omitted). According to Larson, a third reason for permitting awards in the absence of medical testimony is to spare the claimant the expense of procuring medical witnesses. *Id.* at 15–426.162 n. 40.

 In light of the above, and because there is no statutory or case law requirement in Indiana that a claimant present medical evidence that he is unable to return to work in order to support an initial entitlement to temporary total disability benefits, we conclude that lay evidence, such as a claimant's own testimony, is sufficient to support an initial award of temporary total disability payments. Thus, Long's own testimony that she was temporarily totally disabled until late August 1994, after she went to the Mayo Clinic, was sufficient evidence to support the award of temporary total disability benefits.

In any event, even if medical evidence were required to support an award of temporary total disability benefits, a statement

disability." Appellant's Brief at 13–14. These statute sections do not address whether medical evidence is necessary to establish a claimant's inability to work for purposes of determining whether the claimant should receive an initial award of temporary total disability benefits.

IC § 22–3–3–7(c) provides, among other things, that once temporary total disability benefits have begun, they may not be terminated unless one of certain enumerated events has occurred or unless an independent medical examiner determines that the employee is no longer temporarily disabled or is able to return to employment made available to the employee by the employer.

IC § 22–3–3–7(d) provides that an employer need not continue temporary total disability payments for more than fourteen days after the employer's proposed termination date unless the

independent medical examiner determines that the employee is temporarily disabled and unable to return to any employment that the employer has made available to the employee.

IC § 22–3–3–6(e) merely requires that statements of physicians or surgeons required by IC § 22–3–3–6 contain certain information, including "[t]he opinion of the physician or surgeon concerning whether the injury or claimed injury resulted in a disability or impairment, and, if so, the opinion of the physician or surgeon concerning the extent of the disability or impairment and the reasons for the opinion." IC § 22–3–3–6(e)(4). It does not address whether medical evidence is necessary to establish a claimant's inability to return to work for purposes of determining whether the claimant is temporarily totally disabled.

contained in an August 23, 1994 medical report prepared by Gregory S. Peterson, M.D. of the Mayo Clinic to the effect that Long's "[c]hronic low back and right leg pain ... has improved since one year ago but continues to be disabling", *Record* at 95, could be considered medical evidence which supports the award of temporary total disability benefits.

Accordingly, the Board did not err in affirming the hearing judge's determination that Long is entitled to an award of fifty-eight weeks of temporary total disability.

### 3.

Tanglewood next claims that the Board erred in affirming the hearing judge's determination that Long is entitled to an award for 20% permanent partial impairment. Specifically, Tanglewood claims that such determination is contrary to law or not supported by sufficient evidence for several reasons.

Two medical opinions were admitted into evidence relating to Long's permanent partial impairment: (1) a July 25, 1997 report by Todd A. Graham, M.D., in which Dr. Graham opined that Long's permanent partial impairment rating was 5% of the body as a whole, and (2) a May 1, 1995 report by Stephen R. Ribaudo, M.D., in which Dr. Ribaudo provided a permanent partial impairment rating of 20% of the body as a whole.

Tanglewood claims that Dr. Ribaudo related the 20% impairment rating to a lumbar disc lesion and loss in range of lumbosacral motion but did not say that the lumbar disc lesion and loss of lumbosacral motion were in any way causally related to the injuries Long sustained at work on June 3 and 6, 1993. There is no merit to this claim. In a May 1, 1995 report entitled "Independent Medical Evaluation", to which Dr. Ribaudo attached his permanent partial impairment rating, Dr. Ribaudo stated in pertinent part:

DIAGNOSIS:

1. Lumbar spondylosis with invertebral disc disease at L4–5 and L5S1.

2. Right sciatic nerve dysfunction secondary to number 1.

3. Recurrent lower back pain.

According to the patient's history, a cause and effect relationship exists between the on-the-job incidents that occurred on June 3 and June 6, 1993 and aggravation of medical problems with lumbar disc disease and now, right sciatic nerve dysfunction. Such injury has resulted in additional impairment for Mrs. Long.

I am not convinced Mrs. Long has reached maximum medical improvement. I recommend reinstituting physical therapy intervention, repeating the MRI scan and EMG study, and potentially consider epidural steroid blocks.

Mrs. Long has been provided with a Partial Permanent Impairment rating as requested by her attorney, Mr. Joseph Simeri of South Bend, Indiana, (see attached).

*Record* at 99–100.

Tanglewood also claims that Dr. Ribaudo's issuance of a permanent impairment rating of 20% is inconsistent with the statement in the above-quoted portion of his "Independent Medical Evaluation" that he believed Long had not reached maximum medical improvement and with the recommendations of further medical treatment. Tanglewood further claims that, if Dr. Ribaudo did not believe that Long's condition had reached maximum medical improvement, the condition could not be said to be permanent and quiescent. It claims that, because the comments in the "Independent Medical Evaluation" cannot be reconciled with the permanent partial impairment report, Dr. Ribaudo's "reports have no probative value to the issue of Long's impairment", Appellant's Reply Brief at 9, and cannot provide the basis for the Board's award for permanent partial impairment. In addition, Tanglewood claims that, because Dr. Graham's report contained the only impairment rating specifically related to Long's work injuries, the award for 20% permanent partial impairment is contrary to law and not supported by sufficient evidence.

As noted above, in reviewing the Board's findings and conclusions, this court considers only that evidence which supports the Board's determination and any uncontradicted adverse evidence. *Grand Lodge Free & Accepted Masons v. Jones,* 590 N.E.2d 653.

We do not reweigh the evidence or judge the credibility of witnesses, and when there is a conflict in the evidence, we consider only the evidence tending to support the Board's award and which is most favorable to the appellee. *Id.* Applying this standard, we conclude that there was sufficient evidence from which the hearing judge could determine that Long was entitled to an award for 20% permanent partial impairment. Accordingly, the Board did not err in affirming the hearing judge's determination in this regard.

## 4.

■ Long claims that she is entitled to a 10% increase in her award pursuant to IC § 22-3-4-8(f), which provides: "An award of the full board affirmed on appeal, by the employer, shall be increased thereby five percent (5%), and by order of the court may be increased ten percent (10%)." Where this court affirms an award by the Board, the appeal was not frivolous, and appellate review was not thwarted by the actions of the employer, the award should be increased by 5%, but not by 10%. *See Calvary Temple Church, Inc. v. Paino,* 555 N.E.2d 190 (Ind. Ct.App.1990). Because we are affirming the award of the full Board, Long is entitled to a 5% increase in her award.

The award of the Board is affirmed and ordered increased by 5%. We remand this case to the Board for further proceedings consistent with this opinion.

Judgment affirmed, ordered increased by 5%, and remanded.

BAILEY, J., and STATON, J., concur.