**MUNCIE INDIANA TRANSIT AUTHORITY, Appellant–Defendant,**

v.

**Michael B. SMITH, Appellee–Plaintiff.**

No. 93A02–0008–EX–536.

Court of Appeals of Indiana.

March 2, 2001.

Mark D. Gerth, Kightlinger & Gray, Indianapolis, IN, Attorney for Appellant.

## OPINION

VAIDIK, Judge

### Case Summary

Muncie Indiana Transit System (Transit System) appeals from a decision of the full Worker's Compensation Board (the Board) affirming the single hearing officer's deci-sion that Michael Smith suffered injuries arising out of and in the course of his employment with Transit Authority. Specifically, Transit Authority argues that the Board's decision is erroneous because there is insufficient evidence that Smith's carpal tunnel syndrome arose out of Smith's employment. Because we find that Smith's testimony standing alone is insufficient to prove that Smith's job as a bus driver caused the carpal tunnel syndrome, we reverse the Board's decision.[1]

### Facts and Procedural History

Smith became a Transit Authority bus driver in 1982. In 1991, Smith contacted neurologist Dr. John Wulff (Dr. Wulff) regarding his "writer's tremor." Record at 73. Smith returned to Dr. Wulff in August 1994. During the consultation, Smith told the doctor that his hand tremors had gotten worse. Smith also complained of numbness of his hands and feet, and a decrease of strength in his right hand. Smith further told Dr. Wulff that he was exposed to Agent Orange in Vietnam.

Following the consultation, Dr. Wulff summarized as follows in his written report: "[I]t appears that this patient is developing a sensory polyneuropathy. Etiology of this is unknown. It has been reported before with Agent Orange, but also other systemic disorders can also cause a sensory neuropathy." Record at 74. Dr. Wulff recommended an electromyogram (EMG) of Smith's upper and lower extremities. Following the EMG, Dr. Wulff reported as follows:

CLINICAL PROBLEM: History of evidence of peripheral neuropathy. Also has intermittent numbness of hands consistent with carpal tunnel syndrome....

IMPRESSION: This is a mildly abnormal EMG with nerve conduction velocity study because of borderline prolongation of the right median midpalmar sensory stimulation. These findings can be seen

---

1. Transit Authority also argues that Smith's claim is barred by the statute of limitations. Because we reverse on the causation issue, we need not address the statute of limitations issue.

with ... carpal tunnel syndrome. Further clinical correlation of these findings is recommended.

Record at 75. Smith consulted with Dr. Wulff every two to three months for follow-up evaluations. In September 1994, Dr. Wulff again noted evidence of carpal tunnel syndrome.

In May 1996, Smith consulted with Dr. Patrick Murray, an orthopedic surgeon, who diagnosed Smith as suffering from both peripheral neuropathy and bilateral carpal tunnel syndrome. Dr. Murray recommended that Smith undergo surgery for the carpal tunnel syndrome, and Smith agreed to the procedure. When Smith advised his employer of the surgery, Transit Authority told Smith to apply for short-term disability benefits. Smith applied for the benefits; however, the short-term disability insurer denied his claim and advised him to file a worker's compensation claim. Smith submitted a worker's compensation claim, which was also denied. Thereafter, Smith filed an Application for Adjustment of Claim with the Board.

Smith's medical records were admitted into evidence at a hearing before a single hearing officer. None of the records contained an opinion as to the cause of Smith's carpal tunnel syndrome. Also at the hearing, Smith, the sole witness, testified that his job as a bus driver with the "vibrations, the constant having to grip the steering wheel" caused the carpal tunnel syndrome. No other evidence regarding causation was presented. Following the hearing, the hearing officer concluded that although there was no medical evidence "directly connecting [Smith's] carpal tunnel syndrome to his work as a bus driver," Smith's carpal tunnel syndrome was an injury, which arose out of and in the course of Smith's employment with Transit Authority. Record at 4. In adopting the hearing officer's decision, the Board explained as follows:

> While there is no medical opinion directly connecting [Smith's] carpal tunnel syndrome to his work as a bus driver,

this Hearing Member attributes this to [Smith's] difficulty in accurately relating his relevant work history to his physicians. Also, no physician found [Smith's] work, as a bus driver, did *not* cause his carpal tunnel syndrome....

Record at 21. Transit Authority now appeals.

## Discussion and Decision

■ At the outset we note that Smith has failed to file an appellee's brief. When an appellee fails to submit a brief in accordance with our rules, we need not undertake the burden of developing an argument for the appellee. *Robinson v. Valladares*, 738 N.E.2d 278, 280 (Ind.Ct.App. 2000). Rather, Indiana courts have long applied a less stringent standard of review with respect to showings of reversible error when an appellee fails to file a brief. *Id.* Thus, we may reverse if the appellant is able to show *prima facie* error. *Id.* In this context, "prima facie" is defined as "at first sight, on first appearance, or on the face of it." *Id.* (citing *Johnson County Rural Elec. Membership Corp. v. Burnell,* 484 N.E.2d 989, 991 (Ind.Ct.App.1985)).

■ The Indiana Worker's Compensation Act (the Act) provides compensation to employees who suffer injuries which arise out of and in the course of their employment. *Tanglewood Trace v. Long,* 715 N.E.2d 410, 413 (Ind.Ct.App.1999), *reh'g denied, trans. denied.* To be eligible for compensation under the Act, the employee must prove that the injury arose out of and in the course of his employment. *Id.* The phrase "in the course of employment" refers to the time, place and circumstances of the accident. *Id.* The phrase "arose out of the employment" refers to the origin and cause of the injury. *Id.* In order for an accident to arise out of employment, there must be a causal relationship between the employment and the injury. *Id.*

■ As a general rule, the issue of whether an employee's injury arose out of

and in the course of his employment is a question of fact to be determined by the Board. *Ind. Mi. Power Co. v. Roush*, 706 N.E.2d 1110, 1113 (Ind.Ct.App.1999), *reh'g denied, trans. denied.* However, when the facts relating to the question of liability under the Act are undisputed and lead to only one reasonable inference, the determination of whether an injury arose out of or in the course of employment is a question of law. *Id.* We may reverse the Board's decision on a question of law if the undisputed evidence reveals that the Board's decision is an incorrect interpretation of law. *Id.*

Transit Authority claims that the Board's decision is contrary to law because it is based solely on Smith's testimony and is not supported by medical evidence which shows a causal relationship between Smith's employment and his carpal tunnel syndrome. We agree.

Transit Authority has not provided this court with citation to Indiana case law or statute as to what constitutes competent evidence for determining causation in workers compensation cases when the injury was not caused by a sudden and unexpected event, and our research reveals none. We therefore look to our sister states for guidance.

In Alabama, the totality of evidence, including both lay and expert testimony, may satisfy a showing that exposure to a work related risk or danger was a contributing cause of the injury for which benefits are sought. *See Clanton v. Hudson Foods, Inc.*, 594 So.2d 141, 143 (Ala.Civ. App.1991), *reh'g denied, cert. denied.* However, a well-settled rule in Arizona provides that where the result of an accident is not one which is clearly apparent to a layman, the physical condition of an injured employee after an accident and the causal relation of the accident to such condition must be determined by expert medical testimony. *Eldorado Ins. Co. v. Indus. Comm'n*, 27 Ariz.App. 667, 558 P.2d 32, 35 (1976). According to the Arizona Court of Appeals, the "obvious reason for this rule is that lay persons are no better able to testify concerning the functioning of the human body than they are to treat its infirmities." *Id.* at 35. The court further explained that although "most lay persons have opinions and theories of their own as to how the human body functions, our courts have decided that, in order to recover compensation, a standard of expert evidence on the subject is required where the injury is not apparent to the layman."[2] *Id.*

We conclude that where, as here, the injury was not caused by a sudden and unexpected external event, both lay and expert evidence are admissible to show the injuries arose out of and in the course of the employee's employment. Further, when the cause of the injury is not one which is apparent to a lay person and multiple factors may have contributed to causation, expert evidence on the subject is required.

Here, our review of the record reveals that although Smith testified that his employment as a bus driver caused his carpal tunnel syndrome, none of Smith's medical records contained an opinion as to the cause of Smith's condition. Smith was the only witness, and no other evidence of causation was introduced. Because there are many causes of carpal tunnel syndrome, and Smith has a prior history of hand numbness, which may be linked to

2. This evidentiary requirement is similar to the Indiana rule in negligence cases which requires the plaintiff to prove a reasonable connection between his damages and the defendant's conduct. *See Roberson v. Hicks*, 694 N.E.2d 1161, 1163 (Ind.Ct.App.1998), *trans. denied.* Specifically, the plaintiff must show that the harm would not have occurred "but for" the defendant's conduct. *Id.* When an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony may be sufficient for the jury to render a verdict without medical testimony. *Id. See also* IND. EVIDENCE RULE 701. However, when the issue of cause is not within the understanding of a lay person, expert witness testimony on the issue is necessary. *Id. See also* IND. EVIDENCE RULE 702.

his exposure to Agent Orange in Vietnam, expert testimony on the cause of Smith's carpal tunnel syndrome was required. Smith's failure to introduce such testimony is fatal to his claim.

Here, Smith's testimony standing alone is insufficient to support the Board's determination that Smith's carpal tunnel syndrome arose out of his employment. The Board's decision is contrary to law and therefore erroneous.

Judgment reversed.

NAJAM, J., and KIRSCH, J., concur.