

FILED

May 09 2017, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Brandon E. Hall
John H. Shean
Shean Law Offices
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Kristen K. Rollison
Charles J. Maiers
Due Doyle Fanning & Alderfer, LLP
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Matthew Ward,

*Appellant-Plaintiff,*

v.

Lowe's,

*Appellee-Defendant.*

May 9, 2017

Court of Appeals Case No. 93A02-1609-EX-2133

Appeal from the Indiana Worker's Compensation Board

Linda Peterson Hamilton, Chairperson

Application No. C-217099

**Bradford, Judge.**

# Case Summary

[1] Appellant-Petitioner Matthew Ward applied for worker's compensation benefits, claiming that pulmonary embolisms ("PEs") he experienced in 2012 were caused by a work injury he suffered in 2010 while working for Appellee-Respondent Lowe's. Although Ward supported his application with the opinion of a medical doctor, the Indiana Worker's Compensation Board ("the Board") denied Ward's application. Ward now appeals, contending that the Board abused its discretion in denying his application. Because we disagree, we affirm.

# Facts and Procedural History

[2] In 1995, Ward had surgery on his left leg for multiple fractures after he was struck by a car, and the trauma caused varicose veins and some venous insufficiency in the lower leg. On July 6, 2010, Ward was working at the Lowe's store in Bloomington when he lost his footing, spraining his left ankle and fracturing the large toe on his left foot. Ward was directed by a doctor to wear a CAM ("Controlled Ankle Movement") walking boot to immobilize the foot and ankle and to elevate the injury. Ward was examined on July 14, 2010, and the examining physician concluded that Ward's varicose veins in his left leg put him at elevated risk of deep vein thrombosis ("DVT") in the area. Immobilization is a known cause of DVT, which "can certainly lead to the development of pulmonary emboli." Appellant's App. Vol. II p. 143. Lowe's

accepted Ward's injury as compensable and provided Ward with statutory medical care through the end of 2010.

[3] Meanwhile, on July 31, 2010, Ward arrived at the Bloomington Hospital Emergency Room complaining of chest pain. Ward's examination revealed "a large amount of embolic material with the pulmonary arteries consistent with [a] large amount of bilateral pulmonary embolus" and DVT in his lower left leg, likely secondary to his toe fracture. Appellant's App. Vol. II p. 68. Ward was prescribed Coumadin (an anti-coagulant) to treat his PEs. On August 11, 2010, Ward was examined and continued on a CAM walker, with the examining physician opining that "[h]is toe should essentially be healed at this point." Appellant's App. Vol. II p. 75.

[4] On October 13, 2010, Dr. Russell Dukes examined Ward and noted improvement in Ward's PEs. On December 20, 2010, Dr. Mark Hansen opined that Ward could return to work with no restrictions and evaluated him to have a zero-impairment rating for both his left ankle and left large toe. On January 24, 2011, Dr. Dukes evaluated a CT scan of Ward's chest which was performed and concluded that "[t]here is no evidence for acute pulmonary emboli. There has been resolution of the extensive pulmonary emboli compared with the 07/31/2010 examination and now with only a thin linear filling defect within the descending right pulmonary artery likely representing residual scar/fibrotic change or minimal chronic embolus at this location." Appellant's App. Vol. II p. 104. Ward took Coumadin for approximately six to seven months before discontinuing in March of 2011. A May 26, 2012, medical

report indicated that "[t]he patient was on Warfarin[1] until March of 2011 but discontinued when the clots in the lungs were gone, even though the patient still had [a] number [of] clots in the left lower extremity." Appellant's App. Vol. II p. 114-15.

[5] In December of 2011, Ward left Lowe's employ and moved to Chicago, taking a job through a temporary agency doing construction and various other physical labor at a Wal-Mart store. Ward described the work at Wal-Mart as "very [labor] intensive." Appellee's App. Vol. II p. 3-4. On May 26, 2012, Ward was stocking water jugs in the store when he began experiencing chest pain and shortness of breath. Ward was diagnosed with "acute to subacute left PE" and DVT, and it was concluded that "[the p]atient will require lifelong anticoagulation[.]" Appellant's App. Vol. II p. 108.

[6] In September 2012, Ward filed an application for adjustment of claim with the Board. Dr. Robert Gregori conducted an independent medical examination of Ward, which entailed interviewing him, examining him, and reviewing his medical records. Dr. Gregori acknowledged that Ward is "significantly deconditioned" and "obese," Appellant's App. Vol. II p. 145, but concluded that most of the medical treatment Ward had received since the 2010 work injury, including the treatment for the May of 2012 episode, was a result of that injury. Dr. Gregori also calculated "a 23% whole person impairment as a result

---

[1] Coumadin is one of many trade names for warfarin. *See* https://www.drugs.com/international/warfarin.html (last visited April 21, 2017).

of the DVT and pulmonary emboli related to his work injury." Appellant's App. Vol. II p. 146.

[7] In October 2015, Krysten LeFavour, a member of the Board, held a hearing on Ward's application. LeFavour concluded that Ward had failed to show that the May 2012 episode "was caused by his work accident." Appellant's App. Vol. II p. 12. LeFavour concluded that "[i]t is more likely that Plaintiff's condition in 2012 was related to either an idiopathic aggravation of his condition and/or his extensive physical labor at his job in 2012." Appellant's App. Vol. II p. 12. Ward then asked the full Board to review Hearing Member LeFavour's decision. After a hearing, the Board adopted LeFavour's decision as its own, adding that "Dr. Gregori's report dated June 24, 2014, is not sufficient to support Plaintiff's burden of proof that the incident in May of 2012 is causally connected to Plaintiff's work accident." Appellant's App. Vol. II p. 6. Ward argues that the uncontroverted medical opinion evidence he presented in the form of Dr. Gregori's report compels reasonable people to reach a conclusion contrary to the Board's.

# Discussion and Decision

[8] The Worker's Compensation Act requires employers to provide their employees with "compensation for personal injury or death by accident arising out of and in the course of the employment[.]" Ind. Code § 22-3-2-2(a). An accident occurs in the course of employment "when it takes place within the period of employment, at a place where the employee may reasonably be, and while the

employee is fulfilling the duties of employment or while engaged in doing something incidental thereto." *Pavese v. Cleaning Sols.,* 894 N.E.2d 570, 575 (Ind. Ct. App. 2008). An injury arises out of employment when a causal nexus exists between the injury sustained and the duties or services performed by the employee. *Id.*

[9] Ward contends that the Board erred by denying his application for benefits. Because Ward had the burden of proving his entitlement to such benefits, he is essentially appealing from a negative judgment, which we will reverse only if the evidence is such that reasonable people would be compelled to reach a contrary conclusion. *Outlaw v. Erbrich Prods. Co.*, 777 N.E.2d 14, 26 (Ind. Ct. App. 2002), *trans. denied*. We will not weigh the evidence nor judge the credibility of witnesses. *Id*. "Rather, we examine the record only to determine whether there is any substantial evidence and reasonable inferences which can be drawn therefrom to support the Board's findings and conclusion." *Id*.

[10] Lowe's does not dispute that the PEs Ward suffered in July of 2010 were caused by the accident earlier in the month. Lowe's does, however, dispute that the 2010 accident was the cause of the PEs diagnosed in May of 2012. It is true "that a subsequent incident or accident which results in a new, different or additional injury is compensable if it is of such nature and occurs under such circumstances that it can be considered as the proximate and natural result of the original injury.'" *Ind. State Police v. Wiessing,* 836 N.E.2d 1038, 1046 (Ind. Ct. App. 2005) (quoting *Yarbrough v. Polar Ice & Fuel Co.,* 118 Ind. App. 321, 324, 79 N.E.2d 422, 423 (1948) (citations omitted)).

[11]     However, our court has long held that "the subsequent incident or accident may be such as to constitute an independent intervening agency which breaks the chain of causation between the two injuries and relieves the employer of responsibility for the latter." *Id.* (quoting *Yarbrough,* 118 Ind. App. at 324, 79 N.E.2d at 423). "'Cases may arise where the elements of time and space and intervening causes may be so involved that the second injury could not be said to be the proximate, natural, and probable result of the original accident, or the second accident may so predominate that it overshadows the original cause.'" *Id.* at 1047 (quoting *Yarbrough,* 118 Ind. App. at 324-25, 79 N.E.2d at 423-24) (internal citations omitted). "Lack of ordinary care on the part of the claimant which proximately results in the second accident has been held to constitute an independent intervening agency which breaks the chain of causation between the two injuries and thus bars recovery for the second." *Id.*

[12]          Whether the second accident, in the case before us, was the proximate and natural result of the original injury or whether it was the proximate result of the appellant's negligence and therefore should be regarded as an independent intervening cause, was a question of fact for the Industrial Board, to be decided in view of all the circumstances, and its findings in that regard must be sustained, even though the evidence is undisputed, if there is any legitimate theory applicable to the facts on which the award can be upheld.

*Yarbrough*, 118 Ind. App. at 325, 79 N.E.2d at 424. "In other words, if a rather slender thread of evidence supports the Board's decision, we must affirm because the Board has the power to determine the ultimate facts in the case." *Wiessing*, 836 N.E.2d at 1046 (citation and quotation marks omitted).

[13]   Here, Dr. Gregori's expert opinion notwithstanding, the record allows for the conclusion that Ward's 2012 PEs were more likely proximately caused by an intervening agent than by the 2010 injury. The Board considered evidence tending to prove that (1) Ward's orthopedic injuries and initial PEs had been resolved by early 2011, (2) Ward stopped taking anticoagulants that were prescribed to treat his PEs and DVT in March of 2011, and (3) Ward left Lowe's and accepted employment that he himself described as very labor-intensive. The record gives rise to a reasonable inference that Ward decided to stop taking Coumadin even though he was aware that he suffered from unresolved DVT that could lead to future PEs. As mentioned, a May 26, 2012, medical report indicated that Ward "was on Warfarin until March of 2011 but discontinued when the clots in the lungs were gone, even though the patient still had [a] number [of] clots in the left lower extremity." Appellant's App. Vol. II p. 114-15. At the very least, the Board was entitled to conclude that this decision and Ward's decision to take on labor-intensive work were intervening causes of the 2012 PEs. Even if we assume that Ward's 2010 injuries were a "but-for" cause of the 2012 PEs, significantly more than a "slender thread of evidence" supports a conclusion that Wade's decisions concerning his healthcare and work were their *proximate* cause.[2] *Wiessing*, 836 N.E.2d at 1046.

---

[2] In the end, of course, the *reason* Ward stopped taking Coumadin is essentially irrelevant. Even if he had stopped taking it on doctor's orders, the Board would have still been entitled to find that to have been an intervening cause of the 2012 PEs.

[14] Ward's argument on appeal is essentially that he should prevail because he presented an expert medical opinion on causation and Lowe's did not. To the extent Ward argues that the Board was obligated to accept Dr. Gregori's conclusions because he was qualified as an expert witness or because Lowe's did not present expert evidence of its own, we disagree. In fact, we have specifically rejected such arguments and made clear that there are many ways, other than expert evidence, for the defense to challenge a plaintiff's expert. "Doctors and other expert witnesses are not oracles whose opinions, once stated, cannot be questioned or refuted by other evidence, even if that evidence does not come in the form of another expert's testimony." *Walker v. Cuppett*, 808 N.E.2d 85, 95 (Ind. Ct. App. 2004). "It is axiomatic that the accuracy, consistency, and credibility of an expert's opinions may properly be challenged by vigorous cross-examination, presentation of contrary evidence, argument of counsel, and resolution by the trier of fact." *Id*.

[15] Ward relies on our opinion in *May v. Ashley F. Ward, Inc.*, 952 N.E.2d 224 (Ind. Ct. App. 2011), *trans. denied*, in which we held that the Board erred by denying a claim for benefits where the claimant presented an expert's opinion that his sinus cancer was caused by his work exposure to heavy metals. *Id*. at 231. Ward seems to suggest that the basis of our decision in *May* was the fact that the employer did not present any expert opinion evidence to refute the claimant's. While this fact was noted in passing ("Further, Ashley Ward presented no expert testimony in opposition to Dr. Agostino's testimony."), it was not the basis of our decision. *Id*. *May* is simply one of those uncommon

cases where "the evidence is undisputed and leads inescapably to a result contrary to the Board's conclusion that May failed in his burden of establishing causation." *Id*. Here, while very little, if any, of the evidence seems to be in dispute, that does not mean that it inescapably leads to a conclusion contrary to the Board's. As we have already concluded, the record left the Board ample room to conclude that Ward's 2012 PEs were caused by an intervening agent.

[16] The decision of the Board is affirmed.

Brown, J., concurs.

Vaidik, C.J., dissents with opinion.

ATTORNEYS FOR APPELLANT

Brandon E. Hall
John H. Shean
Shean Law Offices
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Kristen K. Rollison
Charles J. Maiers
Due Doyle Fanning & Alderfer,
LLP
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew Ward, *Appellant-Plaintiff,* <br><br> v. <br><br> Lowe's, *Appellee-Defendant* | [Add Hand-down date] <br><br> Court of Appeals Case No. 93A02-1609-EX-2133 <br><br> Appeal from the Indiana Worker's Compensation Board <br><br> Linda Peterson Hamilton, Chairperson <br><br> Application No. C-217099 |

**Vaidik, Chief Judge, dissenting.**

I respectfully dissent. This Court has made clear that expert medical testimony is required when, as in this case, the issue of causation presents "a complicated medical question outside the understanding of laypersons." *Outlaw v. Erbrich Products Co.*, 777 N.E.2d 14, 28-29 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*; *see also Muncie Ind. Transit Auth. v. Smith*, 743 N.E.2d 1214, 1217 (Ind. Ct. App. 2001). This is because "[a]n expert, who has the ability to apply

principles of science to the facts, has the power to draw inferences from the facts which a lay [person] would be incompetent to draw." *Daub v. Daub*, 629 N.E.2d 873, 878 (Ind. Ct. App. 1994), *trans. denied*.

[18] In this case, Ward, after moving back to Indiana and filing his application for additional benefits, went to Dr. Gregori for an independent medical examination. As it turned out, Dr. Gregori, who is board certified in physical medicine, provided the only expert opinion in this matter. And while I agree with the majority that Lowe's was not **required** to retain its own expert to rebut that opinion, I believe that the Board and its members should not reject the conclusions of a sole medical expert lightly. The reasons for doing so must be compelling and apparent from the record. *See, e.g., May v. Ashley F. Ward, Inc.*, 952 N.E.2d 224 (Ind. Ct. App. 2011) (reversing denial of benefits where claimant presented expert's opinion on cause of sinus cancer and employer failed to rebut that expert, either with expert of its own or otherwise), *trans. denied*. Because the Board failed to identify any substantial reasons for rejecting Dr. Gregori's opinion, and for the other reasons stated below, I would reverse the Board's decision.

## The Board's stated reasons for rejecting Dr. Gregori's opinion are meritless

[19] Lowe's summarizes the Board's reasons for rejecting Dr. Gregori's opinion as follows: "Dr. Gregori was opining on a subject outside of his area of expertise; Dr. Gregori failed to account for a possible alternative cause of Ward's injury;

and Dr. Gregori's conclusions were too vague to be relied upon." Appellee's Br. p. 14. None of these findings is supported by the record.

[20] Regarding Dr. Gregori's "area of expertise," the Board noted that he "specializes in physical medicine and pain management, not pulmonology." Appellant's App. Vol. II p. 10. However, the Board did not explain why only a pulmonologist would be qualified to opine on—in other words, why a doctor who specializes in "physical medicine" is unqualified to opine on—the specific causation issue in this case. Lowe's also fails to offer any such explanation. In fact, Lowe's did not even object to the admission of Dr. Gregori's report into evidence; rather, it **stipulated** to the admission of the report. Absent something more, the mere fact that Dr. Gregori is not a pulmonologist is not a proper basis on which to discount his opinion.

[21] As for "a possible alternative cause of Ward's injury," Lowe's contends that the Board made a finding that Dr. Gregori failed to explain "why the 2010 injury, and not the 1995 trauma, was responsible for Ward's May, 2012, treatments[.]" Appellee's Br. p. 13. I see no indication that the Board made such a finding, but even assuming it did, the finding was incorrect. Dr. Gregori specifically explained that he was not attributing the 2012 DVT and pulmonary emboli to the 1995 fractures and surgery because Ward went fifteen years with no such problems after that ordeal, experiencing them for the first time only after the 2010 accident. *See* Appellant's App. Vol. II p. 143 ("Based on the records and the history provided to me by Mr. Ward, he did have a history of a left leg

trauma with some varicosities. However, there is no indication that he ever had a deep venous thrombosis or pulmonary emboli.").

[22] Finally, Lowe's characterization of Dr. Gregori's conclusions as "too vague to be relied upon" is based on the Board's finding that "Dr. Gregori opined that 'most all' of the medical treatment was related to the work injury, but did not elaborate further." *Id*. at 11. But Dr. Gregori **did** explain what he meant when he said "most all":

> I believe that most all the medical treatment that Mr. Ward has received was a result of his pulmonary embolism. **Aside from the cardiac stent that was placed and the work-ups he had for chest pain, which are cardiac in origin, I believe the other admissions that have to do with his pulmonary emboli and DVT are all related to the work injury.**

*Id*. at 143 (emphasis added). In short, Dr. Gregori drew a distinction between the "admissions that have to do with his pulmonary emboli and DVT," which are compensable, and the problems that were "cardiac in origin," which are not compensable. The Board's finding that Dr. Gregori did not "elaborate further" on his "most all" conclusion is simply incorrect.

## The Board's permanent-partial-impairment award is erroneous

[23] I also believe that the Board's treatment of Ward's permanent-partial-impairment claim strongly suggests that its rejection of Dr. Gregori's opinion

was arbitrary. In her order, Hearing Member LeFavour awarded Ward $14,000 based on the following conclusion:

> A review of the medical record and the totality of the evidence persuade the hearing member that Plaintiff sustained a 10% permanent partial impairment as a result of the work accident. Although Plaintiff's aggravation of his pre-existing condition substantially resolved following the work accident, he continued to have symptoms including swelling and pain in his lower extremity.

Appellant's App. Vol. II p. 12. As I see it, LeFavour's conclusion that the ongoing "swelling and pain" in Ward's leg **were** caused by the work accident is at odds with her conclusion that his 2012 DVT and pulmonary emboli were **not** caused by the work accident.

[24] Apparently the Board perceived the same inconsistency. In its order on appeal, the Board affirmed LeFavour's PPI award but explained, "Plaintiff's permanent partial impairment of 10% of the whole person **arises out of Plaintiff's orthopedic condition**. Plaintiff has not met his burden of proving that he sustained a permanent partial impairment as a result of the work accident for the temporary aggravation of his personal pulmonary condition." *Id*. at 6 (emphasis added). Attributing the PPI to Ward's "orthopedic condition" resolved the inconsistency in LeFavour's order, but it created another problem: there is no medical evidence that supports a PPI rating arising out of Ward's "orthopedic condition." To the contrary, and as noted by the majority, "On December 20, 2010, Dr. Mark Hansen opined that Ward could return to work

with no restrictions **and evaluated him to have a zero-impairment rating** for both his left ankle and left large toe." Slip op. at 3. The Board's handling of this issue indicates to me that its decision was arbitrary.

## The Board's theory of causation is not supported by expert evidence

[25] The majority focuses on the evidence it believes supports the Board's conclusion that "[i]t is more likely that Plaintiff's condition in 2012 was related to either an idiopathic aggravation of his condition and/or his extensive physical labor at his job in 2012." Appellant's App. Vol. II p. 12. Relying on the concept of "independent intervening agency" (a concept not cited by Hearing Member LeFavour, the full Board, or even Lowe's), the majority holds that "[t]he record gives rise to a reasonable inference that Ward decided to stop taking Coumadin" and that "the Board was entitled to conclude that this decision and Ward's decision to take on labor-intensive work were intervening causes of the 2012 PEs." Slip op. at 8. I see three problems here.

[26] To begin, the record does not give rise to an inference that Ward "decided"— on his own or against doctor's orders—to stop taking blood thinners. The report cited by the majority merely states that Ward "was on Warfarin until March of 2011 but discontinued when the clots in the lungs were gone." Appellant's App. Vol. II pp. 114-15. But Lowe's itself states that Ward was "taken off" of blood thinners, citing the portion of Ward's deposition in which Ward said that Dr. Dukes "took me off of them." Appellee's Br. p. 16 (citing Appellee's App. Vol. II pp. 32-33).

The majority alternatively holds that "the *reason* Ward stopped taking Coumadin is essentially irrelevant. Even if he had stopped taking it on doctor's orders, the Board would have still been entitled to find that to have been an intervening cause of the 2012 PEs." Slip op. at 8 (emphasis added). But, of course, neither Hearing Member LeFavour nor the full Board found the discontinuation of the blood thinners "to have been an intervening cause of the 2012 PEs."

Likewise, there is no evidence—expert or otherwise—that supports the conclusion that Ward's labor-intensive work in 2012 was the cause of the pulmonary emboli. For all we know, taking on labor-intensive work **decreased** Ward's risk of developing DVT and pulmonary emboli.

# Conclusion

Because Ward presented a doctor's opinion that his May 2012 episode was caused by his work injury, and because neither Lowe's nor the Board identified substantial reasons for rejecting that opinion, I believe the evidence is of a character that reasonable people would be compelled to reach a conclusion contrary to the decision of the Board. *See May*, 952 N.E.2d at 227; *Outlaw*, 777 N.E.2d at 26. Therefore, I would reverse the Board's decision and remand this matter for a determination of benefits in accordance with Dr. Gregori's opinion.