Vaidik, Chief Judge,
dissenting,
I respectfully dissent. This Court has made clear that expert medical testimony is required when, as in this case, the issue of causation presents “a complicated medical question outside the understanding of laypersons.” Outlaw v. Erbrich Products Co., 777 N.E.2d 14, 28-29 (Ind. Ct. App. 2002), reh’g denied, trans. denied; see also Muncie Ind. Transit Auth. v. Smith, 743 N.E.2d 1214, 1217 (Ind. Ct. App. 2001). This, is because. “[a]n expert, who has the ability to apply principles of science to the facts, has the power to draw inferences from the facts which a lay [person] would be incompetent to draw.” Daub v. Daub, 629 N.E.2d 873, 878 (Ind. Ct. App. 1994), trans. denied.
In this case, Ward, after moving back to Indiana and filing his application for additional benefits, went to Dr. Gregori for an independent medical examination. As it turned out, Dr. Gregori, who is board certified in physical medicine, provided the only expert opinion in this matter. And while I agree with the majority that Lowe’s was not required to retain its own expert to rebut that opinion, I believe that the Board and its members should not reject the conclusions’of a sole medical expert lightly. The reasons for doing so must be compelling and apparent from the record. See, e.g., May v. Ashley F. Ward, Inc., 952 N.E.2d 224 (Ind. Ct. App. 2011) (reversing denial of benefits where claimant presented expert’s opinion on cause of sinus cancer and employer failed to rebut that expert, either with expert of its own or otherwise), trans. denied. Because the Board failed to identify any substantial reasons for rejecting Dr. Gregori’s opinion, and for the other reasons stated below, I would reverse the Board’s decision.
The Board’s stated reasons for rejecting Dr. Gregori’s opinion are meritless
Lowe’s summarizes the Board’s reasons for rejecting Dr. Gregorys opinion as follows: “Dr. Gregori was opining on a subject outside of his area of expertise; Dr. Gregori failed to account for a possible alternative cause of Ward’s injury; and Dr. Gregori’s conclusions were too vague to be *924 relied upon.” Appellee’s Br. p. 14. None of these findings is supported by the record.
Regarding Dr. Gregori’s “area of expertise,” the Board noted that he “specializes in physical medicine and pain management, not pulmonology.” Appellant’s App. Vol. II p. 10. However, the Board did not explain why only a pulmonologist would be qualified to opine on—in other words, why a doctor who specializes in “physical medicine” is unqualified to opine on—the specific causation issue in this case. Lowe’s also fails to offer any such explanation. In fact, Lowe’s did not even object to the admission of Dr. Gregori’s report into evidence; rather, it stipulated to the admission of the report. Absent something more, the mere fact that Dr. Gregori is not a pulmonologist is not a proper basis on which to discount his opinion.
As for “a possible alternative cause of Ward’s injury,” Lowe’s contends that the Board made a finding that Dr. Gregori failed to explain “why the 2010 injury, and not the 1995 trauma, was responsible for Ward’s May, 2012, treatments[.]” Appel-lee’s Br. p. 13. I see no indication that the Board made such a finding, but even assuming it did, the finding was incorrect. Dr. Gregori specifically explained that he was not attributing the 2012 DVT and pulmonary emboli to the 1995 fractures and surgery because Ward went fifteen years with no such problems after that ordeal, experiencing them for the first time only after the 2010 accident. See Appellant’s App. Vol. II p. 143 (“Based on the records and the history provided to me by Mr. Ward, he did have a history of a left leg trauma with some varicosities. However, there is no indication that he ever had a deep venous thrombosis or pulmonary em-boli.”).
Finally, Lowe’s characterization of Dr. Gregori’s conclusions as “too vague to be 'relied upon” is based on the Board’s finding that “Dr. Gregori opined that ‘most all’ of the medical treatment was related to the work injury, but did not elaborate further.” Id. at 11. But Dr. Gregori did explain what he meant when he said “most all”:
I believe that most all the medical treatment that Mr. Ward has received was a result of his pulmonary embolism. Aside from the cardiac stent that was placed and the work-ups he had for chest pain, which are cardiac in origin, I believe the other admissions that have to do with his pulmonary emboli and DVT are all related to the work injury.
Id. at 143 (emphasis added). In short, Dr. Gregori drew a distinction between the “admissions that have to do with his pulmonary emboli and DVT,” which are com-pensable, and the problems that were “cardiac in origin,” which are not compensable. The Board’s finding that Dr. Gregori did not “elaborate further” on his “most all” conclusion is simply incorrect.
The Board’s permanent-partial-impairment award is erroneous
I also believe that the Board’s treatment of Ward’s permanent-partial-impairment claim strongly suggests that its rejection of Dr. Gregori’s opinion was arbitrary. In her order, Hearing Member Le-Favour awarded Ward $14,000 based on the following conclusion:
A review of the medical record and the totality of the evidence persuade the hearing member that Plaintiff sustained a 10% permanent partial impairment as a result of the work accident. Although Plaintiffs aggravation of his pre-existing condition substantially resolved following the work accident, he continued to *925 have symptoms including swelling, and pain in his lower extremity.
Appellant’s App. Vol. II p. 12. As I see it, LeFavour’s conclusion that the ongoing “swelling and pain” in Ward’s leg were caused by the work accident is at odds with her conclusion that his 2012 DVT and pulmonary emboli were not caused by the work accident.
Apparently the Board perceived the same inconsistency. In its order on appeal, the Board affirmed LeFavour’s PPI award but explained, “Plaintiffs permanent partial impairment of 10% of the whole person arises out of Plaintiffs orthopedic condition. Plaintiff has not met his burden of proving that he sustained a permanent partial impairment as a result of the work accident for the temporary aggravation of his personal pulmonary condition.” Id. at 6 (emphasis added). Attributing the PPI. to Ward’s “orthopedic condition” resolved the inconsistency in LeFavour’s order, but it created another problem: there is no medical evidence that supports a PPI rating arising out of Ward’s “orthopedic condition.” To the contrary, and as noted by the majority, “On December 20, 2010, Dr. Mark Hansen opined that Ward could return to work with no restrictions and evaluated him to have a zero-impairment rating for both his left ankle and left large toe.” Op. at 920. The Board’s handling of this issue indicates to me that its decision was arbitrary.
The Board’s theory of causation is not supported by expert evidence
The majority focuses on the evidence it believes supports the Board’s conclusion that “[i]t is more likely that Plaintiffs condition in 2012 was related to either an idiopathic aggravation of his condition and/or his extensive physical labor at his job in 2012.” Appellant’s App. Vol. II p. 12. Relying on the concept of “independent intervening agency” (a concept not cited by Hearing Member LeFavour, the full Board, or even Lowe’s), the majority holds that “[t]he record gives rise to a reasonable inference that Ward decided to stop taking Coumadin” and that “the Board was entitled to conclude that this decision and Ward’s decision to take on labor-intensive work were intervening causes of the 2012 PEs.” Op. at 922.1 see three problems here.
To begin, the record does not give rise to an inference that Ward “decided”— on his own or against doctor’s orders—to stop taking blood thinners. The report cited by the majority merely states that Ward “was on Warfarin until March of 2011 but discontinued when the clots in the lungs were gone.” Appellant’s App. Vol. II pp. 114-15. But Lowe’s itself states that Ward was “taken off’ of blood thinners, citing the portion of Ward’s deposition in which Ward said that Dr. Dukes “took me off of them.” Appellee’s Br. p. 16 (citing Appellee’s App. Vol. II pp. 32-33).
The majority alternatively holds that “the reason Ward stopped taking Coumadin is essentially irrelevant. Even if he had stopped taking it on doctor’s orders, the Board would have still been entitled to find that to have been an intervening cause of the 2012 PEs.” Op. at 922 (emphasis added). But, of course, neither Hearing Member LeFavour nor the full Board found the discontinuation of the blood thinners “to have been an intervening cause of the 2012 PEs.”
Likewise, there is no evidence— expert or otherwise—that supports the conclusion- that Ward’s labor-intensive work in 2012 was the cause of the pulmonary emboli. For all we know, taking on labor-intensive work decreased Ward’s risk of developing DVT and pulmonary emboli.
*926 Conclusion
Because Ward presented a doctor’s opinion that his May 2012 episode was caused by his work injury, and because neither Lowe’s nor the Board identified substantial reasons for rejecting that opinion, I believe the evidence is of a character that reasonable people would be compelled to reach a conclusion contrary to the deci sion of the Board. See May, 952 N.E.2d at 227; Outlaw, 777 N.E.2d at 26. Therefore, I would reverse the Board’s decision and remand this matter for a determination of benefits in accordance with Dr, Gregori’s opinion;